<hr />

### The People on the relation of Michael Hayes v. George Bates.

An elector is not to be deprived of his vote, either by the mistake or fraud of the inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty.

Nor should ballots be rejected because of being put in the wrong box by the honest mistake of the voters themselves.

Where, therefore, a city and state election were both held at the same time, under the charge of the same inspectors, and seven ballots for city officers were found at the closing of the poll in the state box, and the circumstances of the case made it reasonably certain that these ballots were in good faith put in by electors who did not put in other ballots for city officers at the same election, it was held that they were properly counted by the inspectors.

*Heard May 19th. Decided May 30th.*

Quo warranto.

The following are the admitted facts in this case:

At an election held in the city of Detroit on the first Tuesday after the first Monday in November, 1862, Michael Hayes and George Bates were opposing candidates for the office of Overseer of Highways in and for the first ward of the city. On the same day a general election for state and county officers was held in said ward, and the same polls were used in, and the same inspectors presided over both elections, but there were separate clerks for each election, and two separate and distinct boxes provided at said polls, one for receiving ballots for state and county officers, and the other for city and ward officers. After closing the polls and upon counting the ballots by

the inspectors of election, it appeared that of the ballots deposited in the said box for city and ward officers three hundred and five were for said Michael Hayes, and two hundred and ninety-eight were for said George Bates, for said office of Overseer of Highways; that the total number of ballots for ward and city officers in said box was six hundred and three; that in said box were found ten ballots for state and county officers, and that the total number of names and voters on the poll list of voters who had deposited ballots in the city box was six hundred and thirteen. Upon examining the box kept at said polls for ballots for state and county officers, the inspectors found that the total number of ballots in said box was one less than the total number of names of voters on the state and county poll list of voters who had deposited their ballots, and they found in said last mentioned box seven ballots for city and ward officers, all bearing the name of George Bates for Overseer of Highways in and for said ward; which the inspectors added to the ballots originally deposited in the city and ward box, and counted them as ballots regularly cast for said Bates, whereby a tie was produced between said Bates and said Hayes for said office. After adding said seven votes as aforesaid, the number of ballots for city and ward officers, including said office of Overseer of Highways, was three less than the number of names on the city poll list; and thereupon said inspectors did certify and return to the clerk of said city of Detroit that the said Michael Hayes and the said George Bates had each received three hundred and five votes at said election for said office.

Afterwards, in pursuance of the charter of the city of Detroit, providing for cases "where two or more shall receive an equal number of votes for the same office," lots were drawn by the proper city officers to determine whether said Hayes or said Bates should be Overseer of Highways for said ward, and the said Bates was elected by the drawing

of said lot, and entered upon the office of Overseer of Highways for said ward. The said drawing and the entrance into office by said Bates were regular and legal, provided that the tie votes produced by counting said seven ballots was legal.

*G. V. N. Lothrop* and *J. L. Chipman*, for the relator.

*Maynard & Meddaugh*, for defendant.

CHRISTIANCY J.:

The only question in this case is whether the seven ballots for city officers found in the state and county box, having the name of the respondent upon them, were properly counted for him by the inspectors.

The two elections, though held upon the same day, were in law distinct and independent of each other, as much as if they happened on different days: and it is, in fact, only in each alternate year that they can occur together. But, though thus distinct, and the ballots to be deposited in separate boxes, yet as both were held together under the supervision of the same inspectors, with both boxes before them for the reception of ballots, the inspector receiving the ballot might be liable, by honest mistake, occasionally to deposit a ballot in the wrong box: and, if he understood that the ballots found in the wrong box were in no case to be counted, he might do the same thing for a fraudulent purpose. But the elector is not to be deprived of his vote either by the mistake or fraud of the inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty. To hold otherwise would be to give more effect to the letter than to the manifest purpose of the statute. And if, in consequence of an error thus caused, the intention of the voters could not be ascertained with the requisite certainty, the election would probably be held void as to all the officers whose election might be affected by the ballots thus misplaced.

Nor do I think the ballots in question should be rejected, though they might have got into the wrong box by the honest mistake of the voters themselves, if their bona fide intention to vote these ballots for city officers can be ascertained with reasonable certainty; unless indeed there should be reasonable ground for believing that, by a similar mistake, they or some of them may have put another city ballot into the city box at the same election. There can be no ground for supposing a mistake of the latter kind in this case, since, if this had been so, the city ballots found in the two boxes must together have exceeded the number of electors voting at the city election, as shown by the poll lists of that election; whereas, when all were counted, they fell three short of the number shown by the poll lists.

There were found in the city box six hundred and thirteen ballots, and this agreed with the number voting at the city election, as shown by the poll lists. But, on examination, it was found that ten of these ballots were for state and county officers, leaving only six hundred and three for city officers. The case does not show the whole number of ballots found in the state and county box, but that, on counting them, it was found that the whole number was one less than the number of electors voting at the state and county election, as shown by the poll lists of that election, and that among them were found seven ballots for city officers, all having the name of the respondent upon them for the office in question. By adding these seven to the six hundred and three city ballots found in the city box, the whole number of city ballots found in both boxes was six hundred and ten, or three less than the number required to correspond with the poll list of the city election. Taking out the seven city ballots from the state and county box, the number of state and county ballots in the latter box would be eight less than that of the electors voting at the state and county election, as shown by the poll lists of that election. If we then add

the ten state and county ballots found in the city box, the whole number of the latter will exceed the number shown by the poll lists of that election by two.

It is plain that the clerks of the city election made no error in keeping the poll lists of persons whose ballots were deposited in that box. But it is equally clear that the clerks of the state and county election did make an error in keeping the lists of that election; as the whole number of ballots in that box was one less than shown by their lists. This might have arisen by the challenge and rejection of some vote after the name of the voter had been written down, and their neglect to erase it.

The error of putting the ballots in the wrong box might occur in several different ways: 1st, by the mistake of the voters; 2d, by the mistake of the inspector placing the ballots in the box; 3d, by the fraud of the voters, and, 4th, by the fraud of the inspector. If it occurred by mistake, it is wholly immaterial, whether it was that of the voters in getting the two ballots relating to different elections interchanged, or that of the inspector depositing the ballots in the box, so that the intention of the voters can be ascertained with reasonable certainty. If it be admitted that the error occurred by mistake, had the number of city ballots found in the state and county box corresponded with the number of state and county ballots found in the city box, no doubt could well have been entertained of the real intention of the voters, to vote both species of ballots, and that the ballots had been interchanged by them or the inspector before they got into the boxes. I think the intention of the voters who voted the seven city ballots in question is equally as clear as if there had been ten of them, so as to correspond with the number of state and county votes in the city box. But had these seven ballots, when added to the city ballots found in the city box, exceeded the number shown by the poll lists of the city election, the conclusion would

have been different. And in the present case the result might be different with the state and county ballots found in the city box, since, when added to those of the same character found in the proper box, the number exceeded that of the poll lists. If we undertake to account for the error on the hypothesis of fraud, the question will be whether it was the fraud of the voters, or of the inspector depositing the ballots? If the fraud of the voters, the ballots should not be counted; if that of the inspector, they should.

If these seven electors undertook to commit a fraud of this kind, it could only have been done with the belief on their part that their votes would be counted, though found in the wrong box; and they could have accomplished the fraud only by handing in two city ballots, representing to the inspector that one of them was a state and county ballot. But, had this been done, the error must have been exposed by the poll list of the city election, since the aggregate number of city ballots found in both boxes must exceed the number of city electors shown by the poll lists of that election. The hypothesis of fraud on the part of the voters is therefore inadmissible so far as it relates to the seven city ballots in question; though it might explain two of the state and county votes found in the city box and which were in excess of the number shown by the poll lists of the state and county election. If the error was caused by the fraud of the inspector, in placing the ballots in the wrong box, he must have acted upon the belief that the ballots thus misplaced would be rejected; and, if such were the rule, he might deprive the elector of his vote at both elections, by placing each of the ballots in the wrong box; and this he might do without the possibility of detection, unless observed in the act of performing the operation; as the error caused by this interchange of ballots would not be made apparent by the poll lists, and it would be impossible to determine whether it was the mistake of the voter or his own mistake or fraud.

In the absence of all evidence of fraud it is doubtless more in accordance with sound principle to account for the error on the theory of mistake than that of fraud; and the ordinary presumption that a public officer has performed his duty would lead us to the same conclusion, unless there is something in the circumstances of the case tending to counteract the presumption. We have already seen that the error can not be accounted for or any probable hypothesis of fraud in the voters. But there is one circumstance which, though perhaps of little weight, yet may be said to have some slight tendency to weaken the theory of mistake, and to excite suspicion of fraud in the inspector who placed the ballots in the box. Without counting the seven disputed ballots, the votes for the two candidates were nearly equal in numbers. Had the error occurred through mistake, there would have been a strong probability that some of these misplaced ballots would have been for one of the candidates and some for the other; but all of them found in the wrong box were for the respondent. This result, though as *possible* as any other, could not, *a priori,* upon any rule of the calculation of chances, be said to be as probable, when there were so many chances against it to one in its favor. But I do not place my conclusion in this case upon this ground. It is sufficient to justify the counting of these votes if the error occurred either by the mistake of the voters or the mistake or fraud of the inspector—and, that it occurred in some of these ways and not from the fraud of the voters, I am entirely satisfied; and I think it reasonably certain that these seven ballots were, in good faith, put in by electors who did not put in another ballot for city officers at the same election. I think, therefore, the respondent has sufficiently shown his title to the office, and that the relator has failed to show his.

MARTIN CH. J. and MANNING J. concurred.

THE PEOPLE *v.* BATES.

CAMPBELL J.:

It appears from the agreed facts that in the city ballot box there were ten ballots for county officers, and in the county box seven for city officers, and that the ballots in the latter box fell one short of the poll list. As the number of votes cast in the city box tallied exactly with the poll list, it is perfectly evident that three county votes were cast into the city box which had no equivalent in the other; and that these three votes must have been handed in to the inspector by the voters themselves as representing city ballots. Of course they can not be counted for either office. But the fact that such an occurrence has happened either by the design or mistake of three voters, and that it is impossible by any means to ascertain who they were, illustrates to my mind the necessity of adhering to the rule of counting only such ballots as are cast into the proper ballot box, without attempting to correct what can only be supposed to be an error, by means purely conjectural.

If a person should hand to the inspector a legal ballot, and that officer, instead of placing it in the box, should secretly destroy it, the absence of that ticket from the box would in no wise affect the election. The law must presume—at least until shown otherwise by something tangible and definite—that the officers in charge of an election do their duty, without mistake as well as without fraud. It is quite probable that in the case before us there was an interchange among a portion of the tickets. But, as the numbers disagree, it is entirely uncertain whether the seven tickets wrongly found in one box were placed there by the same voters who put seven of the other ten erroneous ballots into the other box. Such may be the probability, but it is a probability of conjecture and not of proof. It is quite as likely, assuming the whole to be errors, that the voters made the mistake, as that

the inspector did; and to my mind, although I place no value on the question—such is more likely to have been the case. I do not think a voter's mistake could be legally rectified. He may put in a ballot for a city office supposing it to be a state office. He may also, as happens not unfrequently, vote for one man, supposing he is voting for another. It is his duty to know what vote he puts in, and where it is put. If he does not know it when the vote is put in, he certainly can never know it or prove it afterwards, unless he should happen to be the solitary voter for some ticket or candidate.

There is no proof before us (and probably could be no proof) which shows that any one of the possible ways of adjusting the difficulty is correct, to the exclusion of the rest. I think that the only safe course in any case is to count no ballots not found in the proper ballot box.

I think, therefore, that judgment of ouster sholud be entered against respondent, and that the relator should be adjudged lawfully elected.

*Judgment for respondent.*