THE ATTORNEY GENERAL, EX REL. JAMES A. SCOTT, V.
CHARLES GLASER.

[See *post*, 405.]

*Elections—Return of inspectors—Ballots—Marking.*

1. Under the election law of 1891, the board of election inspectors
   are required, immediately on closing the polls, to proceed to
   canvass the votes, and, after the count of the tickets or
   ballots has been completed, immediately and publicly to de-
   clare the result. And it is held that the neglect of the board
   to complete the canvass on the night of the election, and the
   dating of their report on the next day, ought not to result in
   the disfranchisement of the voters.
2. Under the election law of 1891, any mark upon a ballot, other
   than one appropriate and necessary to designate the intention
   of the voter, must be regarded as a distinguishing mark.
3. The only instance in which an unnecessary mark is recognized
   as possible is in section 34, where it is provided that, if the
   elector votes for more than one person for the same office,
   such ballot shall not be counted for those persons, but shall
   be, as to them, null and void.

Information in the nature of *quo warranto* to determine
the title to the office of comptroller of West Bay City.
Argued June 29, 1894. Judgment of ouster entered
November 7, 1894. Proceedings stayed pending rehear-
ing, and judgment re-entered January 8, 1895. (See *post*,
405.) The facts are stated in the opinion.

*Adolphus A. Ellis*, Attorney General (*Hatch & Cooley*
and *T. A. E. & J. C. Weadock*, of counsel), for relator.

*G. H. Francis* (*Pratt, Van Kleeck & Gilbert*, of coun-
sel), for respondent.

MONTGOMERY, J. This is a contest over the office of
comptroller of West Bay City. A recount was had under

the provisions of Act No. 208, Laws of 1887. Upon the recount as made by the common council, the respondent received a majority of 9. There were cast for the relator 1,169 votes which were undisputed, and for the respondent 1,147 votes which were undisputed. There were counted for the respondent an additional 40 votes which it is claimed by the relator should not have been counted, and there were counted for the relator 9 additional votes which it is claimed by the respondent should not have been counted for him.

The respondent contends that the votes of the First ward should not have been counted for either candidate, as the certificate of the inspectors of election bears date the 4th day of April. Section 36 of Act No. 190, Laws of 1891, provides that "immediately on closing the polls the board shall proceed to canvass the votes;" and section 38 provides that, "after the count of the tickets or ballots has been completed, the result shall be immediately publicly declared." The board did not in fact complete the canvass on the night of the election, but the return bears date the next day. We do not think the delay in canvassing the vote should result in disfranchisement of the voters. It would be a dangerous rule to establish that the board of election inspectors could thwart the will of the voters by a neglect to perform the duty imposed upon them by statute, and it should not be so held except where the plain provisions of the statute require it. See McCrary, Elect. §§ 190, 193, 247, and cases cited.

It becomes necessary, therefore, to determine whether the ballots which were counted on the recount by the common council should have been canvassed. It is claimed by the relator that the 40 ballots which the respondent claims should have been counted for him, and which were in fact counted by the common council, bear distinguish-

ing marks, within the meaning of the law, and should have been excluded.

Act No. 190, Laws of 1891, was in force when the election in question was held, and the material provisions of that act were as follows:

" Any elector may mark or stamp a cross in the space below the party name printed at the head of the ballot. If marked thus, such ballot shall be counted for all the nominees of such party whose names appear on the ballot in that column. If the voter shall have erased some name in the column, or marked a X before the name of a candidate in some other column for the same office, or written in a name under the name of any candidate, the name of such candidate shall not be counted as voted for by such ballot, but, if the name of the candidate shall have been erased, such vote shall be counted for the candidate whose name in another column shall have been marked or whose name shall be written under the name erased." Section 26.

Section 36 contains the provision that—

" Any ballot which shall bear any distinguishing mark or mutilation shall be void, and shall not be counted, and any ballot or part of a ballot from which it is impossible to determine the elector's choice of candidates shall be void as to the candidate or candidates thereby affected."

These provisions have never been before the Court for construction. Statutes containing similar provisions have been adopted in various states of the Union, and have generally been construed as involving a radical departure from the former method of voting, and, generally, a strict compliance with the requirements of such statutes has been required before the vote should be counted.

In Rhode Island the statute provides that the elector "shall prepare his ballot by marking in the appropriate margin or place a cross (X) opposite the name of the candidate of his choice for each office to be filled," and also that each ballot "shall be so printed as to give to each

voter a clear opportunity to designate, by a cross mark (X) in a sufficient margin at the right of the name of each candidate, his choice of candidates." Pub. Laws R. I. 1889, chap. 731, §§ 6, 18. This act was construed by the supreme court, and it was held—*First,* that, as the statute did not require a square to be printed on the ballot, a designation by a cross at the right of the name of the candidate was sufficient; *second,* that no other mark than a cross was a sufficient designation of the voter's intent under the statute. The court said:

"If another mark be used,—there is nothing to certify its meaning. It might be conjectured that it was used inadvertently instead of a cross, but, in our opinion, such a conjecture would not justify the counting of it. The statute declares, 'No voter shall place any mark upon his ballot by which it may be afterwards identified as the one voted by him.' If marks other than crosses were counted, they might be used both to answer the purpose of crosses and to identify the ballots."

It was further held that the cross, to be effectual as a vote, must be placed at the right of a name printed on the ballot, and that a cross placed elsewhere was not a compliance with the statute. *In re Vote Marks,* 17 R. I. 812.

The statute of Indiana provided that the voter should "indicate the candidates for whom he desires to vote by stamping the square immediately preceding their names: * * * *Provided,* however, that if he shall desire to vote for all candidates of one party, * * * and none other, he may place the stamp on the square preceding the title under which the candidates of such party * * * are printed, and the vote shall then be counted for all the candidates under that title, unless the name of one or more candidates under another title shall also be stamped, in which case the names of the candidates so

stamped shall be counted." Laws Ind. 1889, chap. 87, § 45. The court held that, in order that the elector may have his ballot counted at all, he must touch some one of the squares with the stamp; that his choice can be indicated in no other manner; that the elector cannot stamp his ballot elsewhere, and leave the election board to guess at his intention. After the election was held which was under consideration in that case, the law was amended so that "a stamp placed upon a ballot which does not touch a square thereon is declared to be a distinguishing mark, and the ballot is not counted." Laws Ind. 1891, chap. 94, § 9. The court say that " this amendment was intended to make certain that which prior to its passage was left, in some measure, to construction, but it only makes certain that which was intended by the legislature when it passed the original section." *Parvin v. Wimberg,* 130 Ind. 561. See, also, *Sego v. Stoddard,* 136 Ind. 297.

In Maine the statute provides that the voter "shall prepare his ballot by marking in the appropriate margin or place a cross (X) as follows: He may place such mark opposite the name of a party or political designation, * * * or he may place such mark opposite the name of the individual candidates of his choice for each office to be filled." Laws Me. 1891, chap. 102, § 24. The court say of this statute that—

"Its distinguishing feature is its careful provision for a secret ballot. The leading purpose of it was to give the elector an opportunity to cast his vote in such a manner that no other person would know for what candidate he voted, and thus to protect him against all improper influences, and enable him to enjoy absolute freedom from restraint and entire independence in the expression of his choice."

It was held that the ballot could not be counted when the cross was placed to the left, or midway above or below the name of the party or candidate, and not in the appro-

priate blank space at the right, or where the ballot mark was a straight line instead of a cross. It was said:

"If it be conceded that the intention of the voter may be correctly inferred from the mark actually made by him in each of these instances, it is still a fatal objection to the ballot that such an irregular and unauthorized mode of marking it might readily be, and probably would be, agreed upon with the voter as a distinguishing mark to identify the ballot cast by him, whenever identification was desired. Such a palpable disregard of the plain requirements of the act strikes at the root of the secret-ballot system." *Curran v. Clayton,* 86 Me. 42.

These cases support what we believe to be the true rule, that any mark upon a ballot, other than one appropriate and necessary under the law to designate the intention of the voter, must be regarded as a distinguishing mark. Any other rule would result in endless confusion, and would make the local inspectors judges of the voter's intention, and lead to bitter controversies. It was the evident purpose of the Legislature to provide against the necessity for this by laying down rules for the guidance of the voter, and providing a simple method of registering the vote; and while, in some instances, a rigid adherence to the prescribed method may result in throwing out honest ballots, we have not been able to find any safe middle ground to occupy. Either the question of the voter's intent must be held a question of fact in all cases, to be determined by the inspectors on an examination of the ballot, or it must be held that such marks, and such only, as can, under the law, be properly placed upon the ballot, and as are necessary to be there placed to register the voter's intent, are permissible. The only instance in which an unnecessary mark is recognized as possible is in section 34, where it is provided that, if the elector votes for more than one person for the same office, such ballot

shall not be counted for those persons, but shall be, as to them, null and void. This implies that a mark may be made in such a manner as not to indicate whom the voter intended to vote for. This might well have occurred under the law of 1891, through an unsuccessful attempt to vote for a candidate on the opposing ticket, as, under section 26, it was not only necessary to mark the name of such candidate with a cross, but also to erase the name of the candidate on the voter's own ticket. By the law of 1893 the Legislature has wisely dispensed with the necessity for the erasure of the name. See Laws of 1893, Act No. 202, p. 329.

Applying the rule of construction which we think should obtain in this case, there can be no doubt that the relator was elected. A large number of the defective ballots had a cross under the party name of the Republican and also of the Citizens' ticket. The tickets were, it is true, identical; but a single mark constituted a vote, and the second mark was wholly unnecessary and inappropriate to register the voter's intent,—as much so as would have been any mark placed under the Democratic ticket. Such mark might have been an agreed means for identification of the ballot, and must be held to have been a distinguishing mark.

There were also a number of tickets in which the names of the candidates as they appeared on both tickets, both being identical, were marked. These are subject to the same considerations.

As above stated, the law provides that, where the elector desires to vote a straight ticket, it shall only be necessary to mark a cross under the party name. In such cases there are no conditions under which the voter is required to erase names on another party ticket, or place any mark on such tickets, unless he desires to vote for some candi-

date whose name appears thereon, in which case he is required to place a cross in the square opposite the name of such candidate. There are a number of ballots counted for respondent in which the voter has, after marking one party ticket, erased by a cross or straight mark the names on the opposing ticket. As these marks of erasure are not only wholly unnecessary, but under the law inappropriate to express any intent, they must be treated as distinguishing marks.

There are numerous other tickets which it is not necessary to designate specially. A large number contain, not only the necessary cross under the party name, but from one to a dozen other crosses. Others contain particular devices. In one instance, a name is written on a portion of a ticket which does not purport to be the name of a candidate for any office. These tickets fall so clearly within the rule that it is unnecessary to particularize further.

We think judgment should be entered for the relator.

McGRATH, C. J., LONG and HOOKER, JJ., concurred. GRANT, J., did not sit.

———

Upon respondent's application for a rehearing, the following opinion granting the same was filed November 13, 1894:

PER CURIAM. A rehearing has been asked in this case.

We held in our former opinion that the section of the act of 1891 providing that ballots bearing distinguishing marks should not be counted should be construed to exclude all ballots which bear marks not appropriate and necessary to express the voter's intention. It is now said that the interpretation placed upon the decision is such as to exclude a large number of ballots cast at the recent election upon which there appears an erasure of the name

of the candidate on one party ticket and a cross before the name of an opposing candidate.

No such question is involved in the present case, as it arose under the act of 1891, which provided for striking off the name on the party ticket as well as the making of the cross in the square before the name of the opposing candidate. The ballots under consideration are ballots in which the name erased was one appearing on the opposing ballot.

But an examination of the opinion leads us to think that some of the language employed may have been misleading, and, as the public are naturally deeply interested in the subject-matter, we think it proper to state that it was not in the mind of the Court that ballots having a name erased under the party ticket and the name of an opposing candidate marked by a cross should not be counted, but that, in our opinion, such tickets are not legally objectionable, and should be counted. Act No. 202, Laws of 1893, § 26, it is true, provides that where only one candidate is to be elected to an office, and the elector desires to vote for a candidate not on his party ticket, he should make a cross in the circle under the name of his party, and also make a cross in the square before the name of the candidate for whom he wishes to vote on the other ticket, and "in such case it shall not be necessary to strike off the name of the candidate on the party ticket;" but section 17 of the act requires that the booths shall be provided with erasers, and section 26 clearly implies that such erasers may be used to erase the name of the candidate on the party ticket, for it is provided:

"A ticket marked with a cross in the circle under a party name will be deemed a vote for each of the candidates named in such party column whose name is not erased, except those candidates where a cross is placed in the square before the name of some opposing candidate."

The erasure of the name is recognized as appropriate to express the voter's intent not to vote for such candidate; and we do not think that when such an erasure is made on the party ticket, and the voter in addition places a cross before the name of the opposing candidate, either mark should constitute a distinguishing mark.   Taken as a whole, we think it was intended 'by the act of 1893 that such an erasure should be treated as permissible, though not necessary.

The motion for rehearing presents other questions, the gravity of which · induces us to grant a rehearing on the whole case.