GROESBECK *v.* BOARD OF STATE CANVASSERS.

1. ELECTIONS—PRIMARY ELECTION—MANDAMUS—RECOUNT OF VOTES
—PREMATURE ACTION—JURISDICTION.
    Petition for mandamus to compel lawful procedure by board of
    State canvassers in conducting recount of votes cast for gov-
    ernor at primary election held under Act No. 351, Pub. Acts
    1925, as amended by Act No. 306, Pub. Acts 1929, filed while
    recount was being conducted, was not prematurely filed, and
    therefore Supreme Court has jurisdiction.

2. SAME—PROVISIONS OF ELECTION LAW MANDATORY.
    Provisions of said election law are all mandatory in sense that
    election officials are bound to obey them, and observance may
    be enforced by mandamus.

3. SAME—MANDATORY PROVISIONS OF ELECTION LAW MUST BE GIVEN
EFFECT.
    Provisions of election law made mandatory by use of specific
    imperative language, or held so because they are designed to
    preserve purity of election, secrecy of vote, or official character
    and integrity of ballots, both during and after election, must
    be given full effect even though it result in disfranchisement
    of voters or prevention of recount.

4. SAME—EFFECT OF NONOBSERVANCE OF LAW BY OFFICIALS.
    Nonobservance by election officials of provisions of election law
    involving performance of duty by them, which has no effect
    on election, is not fatal to count of ballots, although expressed
    mandatorily, since to hold otherwise would result in dis-
    franchising voters without their fault.

5. SAME—VOTER MAY RELY ON LEGALLY AUTHENTICATED BALLOT.
    Elector has right to rely on legally authenticated ballot, in
    statutory form, handed to him at polls by election official, as
    being official ballot upon which he can cast lawful vote for
    candidate of his choice, and he is not bound to trace history
    of his ballot to ascertain that all provisions of law have been
    fulfilled in its preparation.

6. Same—Effect of Fraud by Voter and Election Official.
Generally, if fraud is committed by voter, ballot should not be counted; if committed by election official, it should.

7. Same—Poll List—Excessive Ballots to be Withdrawn.
Under election law (part 4, chap. 12, §§ 1, 2), poll list is official and determinative evidence of number of votes cast, and it is duty of election officials, if ballots exceed number of voters as shown by poll list, to withdraw such excess ballots from box, and, if not done, board of State canvassers has authority, on recount, to make such withdrawal.

8. Same—Function of Board on Recount is to Correct Fraud or Mistake.
Function of board of State canvassers, on recount, is to correct fraud or mistake under statutory conditions, and to do this it should make such count as election inspectors should have made.

9. Same—Failure to Indorse Ballots Fatal to Recount.
Failure of election inspectors to properly tie ballots in packages and indorse thereon statement showing number and kind of ballots included therein, as required by election law (part 4, chap. 12, § 5), is fatal to their recount by board of State canvassers, since such statement is part of statutory evidence of integrity of ballots.

10. Same—Failure to Deposit Tally Sheet Not Fatal to Recount.
Failure of election inspectors to deposit in ballot box copy of tally sheet, as required by statute, is not fatal to recount, since statute gives it no force of any sort, evidentiary or advisory, and it has no effect on protecting or preserving ballots.

11. Same—Ballots Must be Initialed.
Ballots to be counted must contain initials of election inspectors.

12. Same—Mutilated Ballots—Initialing Ballots.
Where, in tearing off perforated corner, ballot was mutilated, whether marks are present in sufficient fullness to be actually existing as initials of election inspector is test of legality of ballot, which fact is to be determined by election board from view of ballot.

13. SAME—DISTINGUISHING MARKS TO BE PASSED ON BY BOARD.

It is within power of board of State canvassers, on recount, to pass on facts shown on face of ballot, such as determining that letters and figures placed on certain ballots were placed there after they were voted by way of computation by election inspectors, and were not made by voters as distinguishing marks.

14. SAME—OMITTED WORDS WRITTEN ON BALLOTS BY ELECTION OFFICIALS NOT DISTINGUISHING MARKS.

Where words "vote for five" were written on ballots above spaces for names of delegates to county convention in same handwriting, board of State canvassers was justified in holding that said words were written by election officials to supply omission in printing and were not distinguishing marks, in absence of any showing to contrary.

15. SAME—DISTINGUISHING MARK VOIDS BALLOT IN TOTO.

Distinguishing mark anywhere on ballot voids it *in toto*.

16. SAME—FRAUD RESPECTING ABSENT VOTERS' BALLOTS NOT TO BE INVESTIGATED BY BOARD.

Board of State canvassers, on recount of vote cast at primary election, has no authority to make inquiry or correct fraud, if any, in connection with absent voters' ballots, since investigation of same would require taking of extraneous testimony by it.

17. SAME—FAILURE TO ALTERNATE NAMES ON BALLOT NOT FATAL.

Neglect of election officials to alternate names of candidates on ballots, as required by election law (part 3, chap. 4, § 12), does not invalidate ballots.

18. SAME—USE OF VOTING MACHINE LEGAL.

Use of voting machines at primary election, as authorized by election law (part 3, chap. 11, § 3), and failure to alternate names of candidates thereon, did not invalidate the vote cast thereon.

19. SAME—AUTHORITY OF BOARD TO EMPLOY CLERICAL HELP AND APPOINT DEPUTIES.

Under election law authorizing Statewide recount of all ballots cast at primary election, board of State canvassers may employ such supervisory as well as clerical help as exigencies require, and may invest its deputies with such power as will best serve *speedy and accurate recount*.

20. SAME—RIGHT OF CANDIDATES TO APPEAL TO FULL BOARD.

Where board of State canvassers undertakes recount of ballots cast at primary election instead of delegating it to others, as it had right to do, individual members of board and its deputies are subordinate to it, and reasonable appeal from them to it as board is right of candidates; but frivolous or vexatious appeal is not a right.

21. SAME—BOARD MAY DELEGATE CERTAIN POWERS TO DEPUTIES.

In recount of votes cast at primary election, appointment by board of State canvassers of deputies to have supervision of counting tables with right to pass on ballots challenged by candidates by applying thereto rules furnished by board was within its powers under the statute.

22. SAME—RECOUNT MUST BE PUBLIC TO CANDIDATES OR THEIR REPRESENTATIVES.

Recount by board of State canvassers of ballots cast at primary election in all respects must be public, at least to candidates or their representatives, with right of board to make such reasonable regulations as will insure integrity of count and conserve orderly procedure.

Mandamus by Alexander J. Groesbeck against the board of State canvassers to compel lawful procedure and count of votes in recount of ballots cast at the primary election for office of governor on Republican ticket. Wilber M. Brucker, successful candidate on the original count, intervened. Submitted September 24, 1930. (Calendar No. 35,318.) Writ granted September 27, 1930.

*Joseph Walsh, O. L. Smith,* and *E. C. Smith* (*Edward N. Barnard,* of counsel), for plaintiff.

*John P. Kirk,* for defendant.

*Kenneth Stevens, Waldo Granse, John O'Keefe, R. Glen Dunn, Charles H. Goggin, Frederick B. Brown, Clarence Page, Claude Stevens, George E. Nichols, E. B. Howarth,* and *Lawrence Sprague,* for intervener.

Fead, J. On petition of plaintiff, Alexander J. Groesbeck, defendant, board of State canvassers, is conducting a recount of the votes cast for candidates for the nomination for governor on the Republican ticket at the primary election held September 9th, at which plaintiff, intervener Wilber M. Brucker, and Edward J. Jeffries were the candidates. Claiming that the recount is being conducted illegally in many particulars, plaintiff seeks a writ of mandamus to compel lawful procedure and count. Defendant and intervener have answered, denying illegality both in law and in fact. The answers have been traversed.

The petition and answers present no controlling questions calling for framing issues of fact. Objection is made to the petition as being prematurely filed and for other reasons. This court has jurisdiction (*Bradley* v. *Board of State Canvassers,* 154 Mich. 274), and, because the time for certification of the nominee for the election ballot is short, the right to a correct recount clear, and we think the defendant board has misconceived its duty in some respects, we are moved to disregard technicalities of practice and proceed to determination of the legal questions. A preliminary statement of some principles established in this State will obviate the necessity for repetition in discussing specific subjects.

The primary election was held under Act No. 351, Pub. Acts 1925, as amended, a codification known as the Michigan election law. The act is framed with the imperative "shall." The provisions are all mandatory in the sense that the election officials are bound to obey them. Their observance may be enforced by mandamus (*Baker* v. *Board of Election Commissioners,* 110 Mich. 635), and the act pro-

vides criminal penalties for their violation. Some provisions are made mandatory in absolute effect by the use of specific imperative language. Others, while employing no special emphatic words, are held mandatory because they are designed to preserve the purity of the election, the secrecy of the vote, or the official character and integrity of the ballots both during and after the election. Such mandatory provisions must be given full effect even though it results in disfranchisement of voters or prevention of recount. *Attorney General* v. *May,* 99 Mich. 538 (25 L. R. A. 325); *Attorney General* v. *Glaser,* 102 Mich. 396; *Keith* v. *Wendt,* 144 Mich. 49; *People* v. *Rinehart,* 161 Mich. 585; *Ritze* v. *Board of Canvassers,* 172 Mich. 423; *Smith* v. *Board of Canvassers,* 220 Mich. 318.

Other provisions, however, while expressed mandatorily, are held directory in some circumstances, in that their nonobservance is not fatal to a count of ballots, notably when they involve the performance of duty by an election official, the neglect of which has no effect upon the election or will result in disfranchising voters without their fault. An elector has the right to rely upon a legally authenticated ballot, in statutory form, handed to him at the polls by an election official, as being an official ballot upon which he can cast a lawful vote for a candidate of his choice. He is not bound to trace the history of the ballot to ascertain that all the provisions of law have been fulfilled in its preparation. This court has said:

"It may be stated, as a general rule, that the provisions of law relating to the manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat

of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State." *Lindstrom* v. *Board of Canvassers,* 94 Mich. 467 (19 L. R. A. 171).

"If the fraud of the voters, the ballots should not be counted; if that of the inspector, they should." *People* v. *Bates,* 11 Mich. 362 (83 Am. Dec. 745).

"The voter finding the ticket upon the ballot cannot be required to determine its regularity at his peril. This might involve a necessary knowledge of facts difficult to ascertain. He may safely rely upon the action of the officers of the law, who he has a right to suppose have done their duty." *Bragdon* v. *Navarre,* 102 Mich. 259.

"It would be a dangerous rule to establish that the board of election inspectors could thwart the will of the voters by a neglect to perform the duty imposed upon them by statute, and it should not be so held except where the plain provisions of the statute require it." *Attorney General* v. *Glaser,* 102 Mich. 396.

See, also, *People* v. *Board of Supervisors,* 240 Mich. 115; *Abbott* v. *Montcalm County Canvassers,* 172 Mich. 416; *Horning* v. *Board of Canvassers,* 119 Mich. 51; 9 R. C. L. pp. 1061, 1091, 1092; 20 C. J. p. 152.

It must be assumed that the Michigan election law was codified with these principles in mind.

Defendant refused to recount the ballots in boxes where the number of ballots did not correspond with the number of voters as shown by the poll lists, but accepted the original returns of the canvasses by the election inspectors. It is charged, and not denied, that the original returns show count of all the ballots in such boxes, including the excess number over the poll lists. The statute makes the poll list

the official and determinative evidence of the number of votes cast. Michigan election law (Act No. 351, Pub. Acts 1925, as amended by Act No. 306, Pub. Acts 1929), pt. 3, chap. 5, § 5; pt. 4, chap. 8, §§ 17, 28, chap. 12, §§ 1,. 2. It was the first duty of the inspectors of election, after the polls were closed and as part of the count of votes, to compare the poll lists, count the ballots, and, before beginning the actual canvass, to withdraw from the box the ballots in excess of the number of voters according to the poll lists, if any. Part 4, chap. 12, §§ 1, 2, *supra.* It is true the statute gives the recount board no authority, in express words, to make such withdrawal. Its powers are not detailed. They are summed up in the inclusive duty to "make a recount" and return. Part 4, chap. 19, §§ 5, 12. The function of the recount board is to correct fraud or mistake under statutory conditions. To do this, it makes a new count, such a count as the board of election inspectors should have made, "doing again what the inspectors of election have done." *Bradley* v. *Board of State Canvassers, supra.* This carries authority to do what the inspectors should have done in the count. Otherwise a recount would be futile, a plain fraud or mistake would be perpetuated and an opportunity for future fraud pointed out. Defendant should make the proper withdrawal of excess ballots and proceed with the recount of the precincts so involved. It seems hardly necessary to state that this ruling would not apply to an instance where the excess was caused by the inspectors putting blank ballots into the boxes, or where the original canvass corresponds with the poll lists.

Upon completion of the canvass it is the duty of the board of election inspectors to tie the counted ballots in packages or rolls, indorse upon each pack-

age "a statement showing the number and kind of ballots included in such package," and deposit them in the ballot box. Part 4, chap. 12, § 5. Defendant refused to recount ballots not indorsed with the required statement. In this it was right. The statement is part of the statutory evidence of the integrity of the ballots and its absence is fatal to a recount. *Smith* v. *Board of Canvassers, supra.*

The election inspectors are also required to deposit in the ballot boxes a copy of the tally sheet. Defendant refused to recount the ballots in boxes containing no tally sheet. The tally sheet contains merely the computation of an inspector or clerk. The statute gives it no force of any sort, evidentiary or advisory. It has no effect on protecting or preserving the ballots. It may have some use in a *quo warranto* proceeding, but has none in a recount.

By Act No. 306, Pub. Acts 1929, section 16, chap. 18, part 4 was added to the election law. It provides that a recount shall be had of ballots in packages and rolls tied and sealed in the legal manner, if the number corresponds with the poll list, even though the seal on the box has been broken. The presence of a tally sheet is not made a condition of such recanvass. The added statute modified former requirements of recount as set out in earlier acts and the decisions thereunder. It cannot be supposed that the legislature understood or intended that a tally sheet in the box is necessary to recount where the box is properly sealed in full compliance with law, and that it is not necessary where a safeguard of the integrity of ballots, the seal on the box, is wanting. The absence of a tally sheet does not justify refusal to recount.

Counsel agree that, to be counted, ballots must contain initials of the election inspectors. In tear-

ing off the perforated corners of ballots some
initials seem to have been mutilated to a degree. It
is, of course, not enough that a ballot bear evidence
of having been initialed. Whether the marks are
present in sufficient fullness to be actually existing
as initials is the test, and the board must determine
the fact from its view of the ballot. The petition for
mandamus does not contain allegations which war-
rant a specific order in this respect, nor justify more
than a declaration of the rule.

In one precinct a number of ballots bore letters
and figures which, from a view of the ballot, defend-
ant found and held were placed on them after they
were voted, by way of computations by election in-
spectors, and were not made by the voters as distin-
guishing marks. In so holding, the board was with-
in its power to pass upon the facts shown upon the
face of·the ballot. From the pleadings, we cannot
say the ruling was wrong.

In one township, above the spaces for delegates to
the county convention, the words "vote for five"
were written on a large number of ballots. They
were the same words which should have been printed
in that place on the ballots but were not. They
were all in the same handwriting. From anything
before us, the board was justified in holding that the
words were written by election officials to supply the
omission in printing and were not distinguishing
marks.

Plaintiff claims that during the canvass defendant
reversed a ruling on ·the effect of distinguishing
marks appearing otherwise than with relation to the
office of governor, but refused to recount ballots
already canvassed under the former and erroneous
ruling. Defendant denies a change in the rule, but
counsel conceded in the argument that some confu-

sion had existed in that respect at the beginning of the recount. A distinguishing mark anywhere on the ballot voids it *in toto*. Plaintiff was entitled to a count of all the ballots upon this rule, and if the board has failed to apply it in any precincts, it should recount them.

Plaintiff alleges fraud in connection with absent voters' ballots, but, as investigation of the claim would require the taking of extraneous testimony by defendant, it has no authority to make the inquiry or to correct the fraud, if any. *Ritze v. Board of Canvassers, supra.*

Part 3, chap. 4, § 12, of the election law provides:

"The names under the heading designating each official position, where there are more names than there are candidates to be nominated for such office, shall be alternated on the ballot of each party," etc.

It further provides the mechanics of such alternation of names by the printer.

The ballots in Missaukee county were not so alternated; the names of the candidates for governor appearing on them in alphabetical order. Plaintiff contends the whole vote of the county should be rejected. The statute contains no special mandatory language stressing this requirement, nor does it declare the effect of nonobservance. Upon the principle stated above, that the neglect of an election official will not be permitted to disfranchise voters who are without fault, the contention is untenable. One-third of the ballots contained the names of the candidates for governor in the order they would have had on proper alternation. The ballots were furnished as official by the proper officers. On their face they disclosed no infirmity. The elector would not discover the defect from examination of any bal-

lot given him. The failure to alternate the names lessened the opportunity of no elector to cast a vote for the candidate of his choice. Nor did it increase his opportunity to vote illegally. The provision for alternation was evidently intended to afford the candidates equal chance to benefit from the indifference of careless voters who have no personal choice but who mark the first name. The legislature must have deemed position of real advantage, but whether or how much it is of benefit in a particular precinct cannot be known. Where, opposed to speculative benefits to a candidate resulting from observance of the statute are arrayed considerations that non-observance did not and could not operate to deceive an elector, prevent or limit a free choice expressed upon an official ballot in a legal manner, or permit or induce a fraudulent vote, and also that, as a consequence of holding void an election for failure of an election official to do his duty, the disfranchisement of all electors would occur without their fault, one-third of whom cast incontestably legal votes, the rule in this State and elsewhere favors the voter and holds the defect not fatal. If it were otherwise, each voter, on peril of disfranchisement, would need to superintend the preparation of the ballot. Section 2, chap. 4, pt. 3 of the election law, cited by plaintiff, prohibits the use or counting of other than official ballots furnished by the election commissioners, but does not cover the preparation of such ballots. Reference to the adjacent section demonstrates that the legislature distinguished between preparation and furnishing.

Part 3, chap. 11, § 3, of the statute governs the use of voting machines at primary elections and provides:

"The names of candidates shall, where possible, be alternated as on primary election ballots."

Plaintiff claims the use of the machines was illegal and the votes should be rejected because of lack of alternation of the names. The ruling is the same as on alternation on ballots.

Chapter 19, pt. 4, of the act reads in part:

"SEC. 8. It shall not be necessary for all of the members of said board of State canvassers to conduct a particular recount, but each member thereof or any State officer or employee shall have the right to conduct any such recount when properly designated by the board, to the end that the recount may be conducted and the result of the election determined at the earliest possible moment.

"SEC. 9. The board of State canvassers or any member of the board of State canvassers while conducting a recount shall have authority to employ such clerks and assistants as shall be deemed necessary."

Under these sections, defendant board has designated ten persons, whom it calls deputies, to assist in directing the recount. It has furnished them with printed instructions. It has established 100 counting tables, with clerks. The deputies have supervision of the tables. They pass upon ballots challenged by contestants. Plaintiff claims they make independent decisions and have refused to submit appeals to the board. Defendant claims the deputies merely have applied the rules furnished them and have denied no appeal except where the application of the rule was plain and undoubted and the appeal was frivolous or for delay. Plaintiff did not allege any specific instances of claimed illegal rulings by the deputies.

In enacting the law, the legislature must have had in mind a Statewide recount, the approximate number of votes to be canvassed, and the impossibility

of the board of State canvassers conducting it and passing on all conflicts personally. The plain purpose was to authorize the board to employ such supervisory as well as clerical help as the exigencies require, and to invest its deputies with such powers as would best serve a speedy and accurate recount. It could have delegated the conduct of the canvass to others. But, as the board itself undertook the recount, its individual members and the deputies are subordinate to it, and reasonable appeal from them to it, as a board, is a right of contestants. However, a frivolous or vexatious appeal is not a right. The powers the board gave the deputies are within the statute. The proper execution of the powers and the remedy for their abuse rest largely with the board. This court can exercise supervision of them only upon presentation of allegation and proof of specific misconduct or illegality.

Plaintiff claims defendant has outlined and followed no method of procedure from which plaintiff can determine whether the results from precinct recounts are properly tabulated, asserts returns have been altered after the count has been made and he has been refused permission to make copies of the reports of clerks so that he may compute the votes. Defendant vigorously denies the allegations, except in the respect that, offering to permit the use of blanks of a different color, it has prevented plaintiff from using blanks identical with those used by the clerks. The recount in all respects must be public, at least as to the candidates or their representatives. They are entitled to full opportunity to observe each phase of the operation and to trace the count of a ballot from the box to its final resting place as part of the total. On the other hand, defendant may make such reasonable regulations as will insure the

integrity of the count and conserve orderly procedure. Defendant not only denies that plaintiff's access to any operation has been circumscribed, but offers full opportunity for complete inspection in the future. This being the situation, no action by this court seems necessary thereon at this time.

Plaintiff makes several other general allegations of improper conduct tolerated by defendant, which the latter denies. The petition contains no recital of specific instances which may be reached through mandamus, except by way of a general order that no persons, other than defendant and its appointed and authorized deputies, be permitted to determine the validity of ballots or have direction of clerks and assistants.

A writ of mandamus may issue, if necessary, in accordance with this opinion.

WIEST, C. J., and BUTZEL, CLARK, McDONALD, POTTER, SHARPE, and NORTH, JJ., concurred.