WARD et al. v. KROPF et al.

(Supreme Court, Special Term, Seneca County. January 1, 1910.)

1. MUNICIPAL CORPORATIONS (§ 48*)—ELECTION TO REINCORPORATE.

Village Law (Consol. Laws. c. 64) § 301, provides that a proposition to reincorporate may be submitted at a special election to he held by the same officers and conducted in the same manner as provided for an annual election. Section 12 allows resident women taxpayers to vote on the question whether town territory shall be incorporated as a village, and section 41 allows them to vote on the question whether money shall be raised by the village by tax or assessment, and upon the question whether the village shall be dissolved. *Held*, that an election for the reincorporation of a village is not invalid because women taxpayers residing in the village were not permitted to vote on such question.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 48.*]

2. MUNICIPAL CORPORATIONS (§ 918*)—FISCAL MANAGEMENT—BONDS—ELECTIONS.

Under Village Law (Consol. Laws, c. 64) § 41, providing that resident women taxpayers shall be allowed to vote on the question whether money shall be raised by the village by tax or assessment, a bond issue is not invalid because resident women taxpayers were allowed to vote on the question of their issuance, as the proposition involved the raising of money by tax on village property.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1923; Dec. Dig. § 918.*]

3. MUNICIPAL CORPORATIONS (§ 918*)—FISCAL MANAGEMENT—BONDS—ELECTIONS.

Under the special charter of a village, the trustees were ex officio inspectors of elections in their respective districts. Village Law (Consol. Laws, c. 64) § 303, provides that the officers of a village in office when the reincorporation takes effect shall continue until noon of the Monday following the date when the next annual election in such village may be held. Section 51 provides that, if a village is divided into election districts, the board of trustees shall annually, before the annual election, appoint two inspectors of election for each district, to preside at all village elections therein until their successors are appointed, and such inspectors shall not both be chosen from the same political party. Section 56 directs that special elections be held by the same officers as an annual election. After the reincorporation of a village, but before the trus-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tees under the former incorporation had ceased to hold office, an election was held on the question of the issuance of bonds, and the trustees chose as inspectors two members of their own board for each of the three districts; but in one of the districts both appointees were of the same party. *Held*, that the bonds were not invalidated by the failure of the trustees in appointing the inspectors to strictly observe the provision of section 51. ·

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1922; Dec. Dig. § 918.*]

4. MUNICIPAL CORPORATIONS (§ 995*)—TAXPAYER'S ACTION—PAYMENT TO CONTRACTOR UNDER INVALID CONTRACT—INJUNCTION.

Where work is done for a village under a contract which the village had no right to make, the contractors have no recourse against the village in any form of action for whatever benefit to village property grew out of the partial performance of the illegal contract; and, if the trustees appropriate a portion of the proceeds of a bond issue to pay the contractor without a permissive act of the Legislature, it constitutes a waste of funds, and such payment may be prevented in a taxpayer's action.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2163, 2164; Dec. Dig. § 995.*]

5. MUNICIPAL CORPORATIONS (§ 663*)—STREETS—OWNERSHIP OF FEE.

The fee of the land in a village street is presumed to belong to the abutting owners.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1438; Dec. Dig. § 663.*]

6. MUNICIPAL CORPORATIONS (§ 350*)—PUBLIC IMPROVEMENTS—UNAUTHORIZED CONTRACTS—RIGHTS ON PARTIAL PERFORMANCE.

Where a village not owning the fee in its streets makes an illegal contract for the construction of a sewer therein, and the contractor partially completes the contract and lays a quantity of sewer pipe, the village does not become the owner of the pipe, it having refused to pay for the same, nor succeed to the rights of abutting owners in the pipe; and hence, if properly authorized, the village board may advertise for bids to construct an entire sewer system for the village, and, if the former contractors are the lowest bidders, they may take advantage of the work already done, if it corresponds with the plans and specifications under the new contract, and, if other contractors are the successful bidders, they may arrange with the old contractors to take advantage of the work already done.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 879; Dec. Dig. § 350.*]

Action by John C. Ward and others, as taxpayers, against John Kropf, as president of the Village of Waterloo, and others, to restrain the issuing of bonds or making any payments of money on a contract entered into by the village officers. Injunction granted.

This is a taxpayer's action brought to restrain the officers of the village of Waterloo from issuing bonds for $100,000 or making any payments of money belonging to the village upon a contract entered into between the village officers and the firm of Bennett & Shepard and one A. B. Griswold, for the construction of a sewer system and disposal plant in said village.

Hamilton Ward and Clarence W. McKay, for plaintiffs.
Charles A. Hawley and George E. Zartman, for defendants.

SUTHERLAND, J. The village of Waterloo, acting under its special charter (chapter 359, p. 456, Laws 1882), undertook the con-

struction of a sewer system in the year 1908, and at a special election called by the village trustees a resolution was submitted to the electors of the village for the "appropriation of $100,000, or such part thereof as may be required, * * * for the purpose of constructing and completing a sewer system with disposal plant for the village of Waterloo." The plans and specifications for the construction of the system had been made by engineers employed by the village trustees, and approved by the state commissioner of health. The proposition thus submitted was approved by a majority vote at the special election, and the trustees duly advertised for bids and let the contract for the erection of the sewer system and disposal plant to Bennett & Shepard and A. B. Griswold, who were the lowest bidders therefor. Bennett & Shepard proceeded with their work under the contract and made the necessary excavations, procured the pipe and materials, and substantially completed a third or more of the contemplated system. Meantime the village attempted to obtain by condemnation proceedings certain land needed for the disposal plant, but was unsuccessful because the court held that the proposition voted upon at the special election was fatally defective, in that it did not contain a statement of the estimated maximum and minimum cost of the improvement, as required by section 261 of the General Village Law (Consol. Laws, c. 64), as then in force.

The opinion [1] of Mr. Justice Benton, by whom the condemnation case was heard, was handed down early in October, 1908, and came to the attention at once of the village attorney and trustees; but the work upon the contract was allowed to proceed until late in the fall or early in the winter. No bonds were sold, and upon the estimates of work from time to time made under the contract advances were made to the contractors from the proceeds of notes made by certain citizens of the village, and indorsed and discounted at a bank by the village attorney, who paid the money to the contractors, taking from them assignments of their claims against the village; and some of the trustees of the village were signers of those notes. It was expected, apparently, by the village attorney and the trustees, that curative legislation could be obtained from the Legislature of 1909 validating the acts of the trustees in letting the contracts; but a bill looking toward that end, which passed the Senate and Assembly, did not receive the approval of the Governor and failed to become a law. At a meeting of the village board June 14, 1909, a resolution was adopted directing that a special election be held to vote upon a proposition to reincorporate under the general village law, and, due notice having been given, such special election was held July 27th, and the proposition to reincorporate under the general village law was duly carried by a majority of 398. Subsequently, August 4th, the trustees resolved to call a special election and to submit a proposition to the electors for the construction of a sewer system and disposal plant at an estimated maximum cost of $100,000 and estimated minimum cost of $90,000, and for the creation of a funded debt of $100,000 for that purpose, to be paid in 30 equal annual installments, with interest, and to raise by annual tax a sum sufficient to pay the said installments of principal and interest as they

---

[1] See Daily Record, No. 175.

should fall due, and the special election was held pursuant to that resolution August 17th, due notice having been given, and the proposition was carried by a substantial majority of the electors participating therein.

At the commencement of this action, a preliminary injunction was granted restraining the issuing of bonds pursuant to the affirmative action taken by the electors August 17th, as aforesaid, and it is charged in the complaint that the bond issue is unlawful for various reasons.

First. It is claimed that the vote for the reincorporation of the village of Waterloo under the general village act was invalid, because women taxpayers residing in the village were not permitted to vote on the question of the reincorporation. There were from 300 to 350 women in the village otherwise eligible to vote on the subject of reincorporation if not disqualified by sex. Sections 300 and 301 of the village law provides that a proposition to reincorporate may be submitted at an annual election or at a special election to be called for that purpose; and, if a special election is held, it shall be held by the same officers and conducted and the result canvassed in the same manner as provided by law for an annual election in such village. And there is no statement other than this as to the qualifications of voters at such special election upon the question of reincorporation.

Under the village law, resident women taxpayers are allowed to vote on three propositions: (1) Whether town territory shall be incorporated as a village (section 12). (2) Whether money shall be raised by the village by tax or assessment. And (3) whether the village shall be dissolved (section 41). But the statute does not seem to have expressly conferred the right upon women to vote on the question of reincorporation, and it would seem to be consistent with the trend of decisions to hold that women had no right to vote upon that question. But if they had the right to vote on the question, there were not enough of them in the entire village to overcome the majority which was cast in favor of the proposition to reincorporate; and, were that not so, it is doubtful if the objection could be raised in this action. People ex rel. Kingsland v. Clark, 70 N. Y. 518. It is a strange condition of affairs indeed if all the subsequent acts of the village officers for all time can be attacked upon the ground that women were excluded from voting at the election called to decide the question of reincorporation.

Accordingly, I hold that the village was duly reincorporated under the general village law.

Second. Plaintiffs attack the validity of the proposed bond issue because women resident taxpayers were allowed to vote upon the proposition at the special election August 17th; but it is clear the objection is not well taken. The proposition involved the raising of money by tax on village property, and under section 41 the women residents who were assessed on the last assessment roll were entitled to vote thereon. This precise question has recently been before this court in the case of Gould v. Village of Seneca Falls (see Daily Record, No. 448, p. 2), in which Mr. Justice Benton, in an unreported opinion, held that women were entitled to vote on a proposition very similar to the one submitted at this election. People ex rel. Dillon v. Moir, 62 Misc. Rep. 35, 115

N. Y. Supp. 1029; is not authority to the contrary; because the proposition in that case submitted to the electors of the village of Marcellus did not conform to section 6 of the General Municipal Law (Consol. Laws, c. 24), in that it failed to provide for raising by taxation or assessment the money requisite to retire the bonds.

Third. The validity of the proposed bond issue is contested further by the plaintiffs on the ground that the special election of August 17th was not conducted by inspectors of election chosen and qualified pursuant to section 51 of the village law, which provides that, if a village is divided into election districts, the board of trustees shall "annually, at least thirty days before the annual election, appoint two inspectors of election for each district to preside at all village elections therein, until their successors are appointed. Such inspectors shall not both be chosen from the same political party."

Special elections under General Village Law, § 56, are directed to be held by the same officers and conducted and the result canvassed in the same manner as an annual election. August 4th the trustees of the village chose as inspectors of election two members of their own board for each of the three districts respectively. The appointees were of opposing parties in the first and second districts, but in the third both appointees were of the same party.

Now, under the special charter, which was in force until July 27th, the trustees of the village were ex officio inspectors of election in their respective districts, and under section 303 of the general village law it is provided:

"The officers of the village in office when the reincorporation takes effect shall continue to hold their offices until noon on the Monday following the date when the next annual election in such village may be held under this chapter, at which time their terms of office shall expire."

The former trustees continued in office after the reincorporation under section 303 of the general law just quoted, and a question arose as to whether by section 303 their former duty to act as inspectors continued, or, as the plaintiffs now contend, new inspectors should be appointed to take office immediately under section 51. Whatever may be said as to the necessity of any appointment, or the propriety of the trustees appointing themselves inspectors, I am thoroughly convinced, if any irregularity existed in the appointment of inspectors, it did not impair the validity of the election. People v. Cook, 8 N. Y. 67, 59 Am. Dec. 451; People ex rel. Guernsey v. Pierson, 35 Misc. Rep. 406, 71 N. Y. Supp. 993, affirmed 64 App. Div. 624, 72 N. Y. Supp. 1123. To hold otherwise and to defeat the popular will expressed at an orderly election, of which due notice had been given, would be the apotheosis of mere form; the undue magnification of that which is merely accessory or incidental, and the sacrifice of the substantial and essential object which the law is intended to attain. So that we hold the proceedings leading up to the final adoption of the proposition to construct a sewer system in the village and to bond the village for the payment of the same have been regular and valid.

Fourth. There remains the question whether, in carrying out the resolution adopted August 17th, the defendants, as trustees of the

village, were intending when this action was commenced to make an. unlawful use of the moneys thus lawfully appropriated by the village for the building of a sewer system; and this brings to the front at once the question of the relation of the village to the contractors who have built one-third of a sewer system under an illegal contract. The plaintiffs charge that the defendants intended, out of the proceeds of the bond issue authorized August 17th, to pay the contractors for the work already done; and in this respect the plaintiffs insist that it is the duty of the trustees to appropriate for the use of the village, and to utilize as part of the sewer system, the one-third already constructed, to advertise for competitive bids for the construction of the remaining two-thirds, and to refuse the contractors any compensation whatever for the one-third already finished.

There seems to be no escape from the conclusion that the contracttors have no enforceable claim upon the village for the work already done. Inasmuch as the work was done under a contract which the village had no right to make, the contractors proceeded at their own risk, and now have no recourse against the village in any form of action for whatever benefit or enrichment or accession to village property grew out of the partial performance of that illegal contract. McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144; Parr v. President of Greenbush, 72 N. Y. 463; People ex rel. Coughlin v. Gleason, 121 N. Y. 631, 25 N. E. 4. And therefore, if the trustees were to appropriate a portion of the proceeds of the bond issue for the purpose of paying the contractors anything as compensation for the work already done, without a permissive act of the Legislature, it would constitute a waste of village funds, and such payment can be prevented in a taxpayer's action. Queens Co. Water Co. v. Monroe, 83 App. Div. 105, 82 N. Y. Supp. 610.

But while it is clear that the trustees have no right to recognize directly or indirectly any obligation on the part of the village to the contractors or their assigns for the work already done, a far different question arises as to the right of the village to appropriate to itself the pipes and laterals laid in the street already by these contractors. The village can remain passive. It can let the sewer pipes and laterals lie where they are and rust away unused, or it can dig them up and substitute others. But to appropriate to itself by affirmative action hereafter the materials placed in the ground by the contractors, without compensation, and to utilize the labor expended by them, is another matter. The land itself in which the pipes are laid does not belong to the village of Waterloo, and the title to the pipe has not vested. in the village. Had these contractors laid the pipe upon land owned by the village, it might be claimed that the village would have become the owner of the pipe because it had been affixed to and become part of the real estate. But the village only has an easement in and over that land for street purposes. The fee of the land in the street is presumed to belong to the abutting owner. Bissell v. N. Y. Central R. R. Co., 23 N. Y. 61; Elliott on Roads & Streets, §§ 149, 886. And the village only having a right to make use of the land for highway purposes under its easement has not become the owner of the sewer pipe laid in the street by the contractors. Fisher v. City of.

Rochester, 6 Lans. 225; Robert v. Sadler, 104 N. Y. 229, 10 N. E. 428, 58 Am. Rep. 498. Whatever rights, if any, the abutting owners have in the sewer pipe, the village cannot claim; and these plaintiffs cannot stand upon those rights in this action. So that it does not seem to me that the plaintiffs' position is tenable when they assert that it is the duty of the village board to appropriate to the use of the village, as if the village now owned the same, the portion of the sewer already laid in the streets.

What then may the village lawfully do in order to obtain a sewer system pursuant to the resolution adopted at the special election of August 17th? In my opinion the village board may advertise for bids to construct an entire sewer system for the village, ignoring in their advertisement the fact that pipes have been laid in one-third of the streets. If the contractors who have already laid this pipe are the lowest bidders under the new advertisement, I see no reason in law or equity why they should not then have the advantage of the work already done by them. It certainly would not be necessary for those contractors to tear up the pipe and relay them in exactly the same position and manner. If the work already done corresponds with the plans and specifications under the new contract, and the work is accepted pro tanto by the engineers and village trustees as performance to that extent of the new contract to be let, then no law has been violated and no principle of good government or public policy invaded. If the contractors who have already done this work are not the successful bidders, but the successful bidder can arrange with the old contrac-tors upon a suitable payment for the work done by them, the new contractor can avail himself of the work already done in so far as it meets the plans and specifications adopted by the village board. If the new contractor does not care to deal with the old contractors, but prefers to do the work all over again, it will be the loss of the old contractors and of the trustees and other citizens who have advanced money to the contractors as payment in part for the work already done.

An attempt was made at the trial to show that the contract originally let was for an extravagant amount; but the attempt utterly failed. The experts called by the plaintiff showed by their figures that the original contract was let at a fair figure, and that the work could not be performed from the beginning for any less amount than the original contract price.

There remains to be considered the question whether the plaintiffs had any ground for action. The proposition, as voted upon at the special election August 17th, contemplated apparently the building of a complete system ab initio, to cost not more than $100,000 nor less than $90,000. No one expected that to complete the remaining two-thirds would require $90,000. The only matter which seems to have been in doubt was how to deal with the portion already completed and the claim of the contractors and their assigns against the village for that part of the work. I am inclined to hold that the plaintiffs' application for an injunction was not ill advised, and that in view of the fact that after the decision of Mr. Justice Benton holding that the proposition adopted May 27, 1908, was insufficient, work on the con-

tract was continued with the acquiescence of the trustees (some of them becoming interested in the assigned claims of the contractors against the village for the work already done, and for work performed after the decision), the plaintiffs had good reason to apprehend that it was the intention of the trustees to recognize in some way the contractors or their assigns had a valid claim upon the village, which could be paid out of the proceeds of the issue of the bonds authorized by the vote of August 17th, and that, accordingly, it was not inopportune for the plaintiffs to apply for an injunction to restrain the application of any portion of the proceeds of that bond issue to the payment of any claims arising out of the partial performance of the contract, which was invalid for the reasons stated.

Accordingly, there may be a judgment entered in this case restraining the defendants from recognizing as valid the contract or contracts under which the portion of the sewer referred to has been constructed, and, enjoining the payment of any moneys of the village, whether the proceeds of the sale of bonds or otherwise, for the work already done; but said judgment may provide that it shall not operate to prevent the letting of a new contract for the performance of the entire work ab initio by the said contractors, if they are the lowest bidders under the new advertisement to be made, in which event said contractors may avail themselves of the work already done so far as said work shall be in conformity to the plans and specifications adopted by the village for the new system; and said judgment may also provide that it shall not operate to prevent any contractor to whom the contract may be awarded from obtaining by purchase, or otherwise, from the said former contractors, the right to utilize pro tanto the work and material already performed and furnished by them as aforesaid, if said work and materials shall conform to the plans and specifications adopted by the village; and said decree may contain an express adjudication that the issue of bonds provided for in the resolution adopted at the special election held August 17th was and is duly authorized in accordance with the statutes in such case made and provided.

The plaintiffs are entitled to a bill of costs.

Findings may be prepared and a decree submitted in accordance with the views herein expressed.