ABBOTT v. BOARD OF CANVASSERS OF MONTCALM
COUNTY.

1. ELECTIONS—POLL LIST—NUMBERS OPPOSITE NAMES—RECOUNT.
   Ballots cast at a primary election in one township should not be rejected on recount because of the failure of the inspectors to place opposite the names of the voters on the poll list the numbers of their ballots, unless the irregularity was fraudulent. Act No. 281, Pub. Acts 1909, § 35; 1 How Stat. [2d Ed.] § 539.

2. SAME.
   After having counted and tallied ballots which the inspector had omitted to mark with his initials, reserving the question

whether the votes were legal until later, the board of canvassers rightly rejected the ballots as defective before the final adjournment, and were not precluded from changing their determination.

Mandamus by W. Glen Abbott against the board of county canvassers of Montcalm county and others to compel the board to reconvene and modify their determination on recount as to the office of county clerk. Submitted October 18, 1912. (Calendar No. 25,385.) Writ denied October 23, 1912.

*C. L. Rarden* and *R. A. Hawley*, for relator.

*N. O. Griswold* and *James Scully*, for respondents.

KUHN, J. The relator asks for mandamus to compel the board of county canvassers to reconvene and change the result of a recount had before them with reference to the office of county clerk, for which relator and Harmon W. Taylor were candidates at the primary election held on August 27, 1912.

Relator, among other things, alleges in his petition that in the township of Sidney the inspectors failed to place opposite the names of the voters on the poll lists the numbers required by statute, with the exception that in the poll book filed with the county clerk numbers appeared opposite the first 22 names and in the poll book filed with the township clerk numbers appeared opposite the names of the first 14 voters. Relator urged before the board of canvassers that the entire vote of the township should be rejected because of this irregularity. This the board declined to do. Section 35 of Act No. 281 of the Public Acts of 1909 (1 How. Stat. [2d Ed.] § 539), provides in part as follows:

"When an enrolled voter asks for a ballot the inspector shall enter his name upon the poll list, the name of the political party *and the number of his ballot,* before the same is given to the voter, and the inspector receiving the

172 MICH.—27.

ballot shall, before depositing it in the box, ascertain by comparison with the poll list whether it is the same ballot given to such voter, and if it is not the same ballot he shall reject it and such voter shall not be allowed to vote at such primary election."

The answer of respondents with reference to this claim sets up the following:

"These respondents admit that the returns of the township board of inspectors of the township of Sidney showed 33 votes were cast for the relator and 115 for Harmon W. Taylor, for the office of county clerk. And the respondent alleges that one of the poll books kept at said primary election in said township of Sidney was on file with the relator before these respondents convened as a board of canvassers, and was in his possession when he filed with these respondents a petition for the recount in said township of Sidney; that in his said petition he made no reference to said poll list or poll book, or the numbers of ballots not appearing thereon, but averred therein that he had received more than 33 votes in said township, and that said Taylor had received less than 115 votes, in substance; that the votes of said township of Sidney were recounted by these respondents according to the petition of said relator on the 12th day of September, 1912, and that it appeared by such recount that the relator had 33 votes and the said Taylor 115 votes, the recount making no change from the statement and returns given by the township board of inspectors; that afterward, but while the matter was still before the board, the relator, through his counsel, called attention to the fact that the numbers of ballots given out to voters from time to time were not entered by the clerk upon the poll list opposite the name of the voter, as set forth in the relator's petition to this court."

The board acted properly in refusing to reject the vote of the township. The failure of the clerk of the board of election inspectors to properly place the numbers opposite the names of the voters was not the fault of the voters. They did everything required by law, and an entire township should not be disfranchised because of a mere omission of duty on the part of an inspector. Any other con-

clusion would enable a corrupt inspector to disfranchise the electors when they were not parties to the fraud.

In the case of *Lindstrom* v. *Board of County Canvassers*, 94 Mich. 469 (54 N. W. 281, 19 L. R. A. 171), this court held as follows:

" It may be stated, as a general rule, that the provisions of law relating to the manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State."

In the instant case there is no claim made of fraud on the part of the candidate, nor does it appear from the language of the primary act that the legislature contemplated that such an omission of duty on the part of the inspector, through no fault of the voter or candidate, should result in the disfranchisement of an entire district.

Relator also claims that the votes in other townships were not properly counted by the board of canvassers, but, in paragraph 10 of this petition, sets up the following:

" Your petitioner further shows that, had said board of county canvassers not unlawfully rejected said votes cast for your petitioner in the townships of Richland and Evergreen in the manner above set forth, your petitioner and the said Harmon W. Taylor would have the same number of votes each for the republican nomination for county clerk."

Paragraph 7 of respondents' answer is as follows:

" These respondents further say it is true that on the 4th day of October, A. D. 1912, a final computation was made by these respondents of the votes cast for said relator and the said Taylor at said primary election, and in said computation it is also true that the recount of votes in the townships of Bushnell, Douglas, and Ferris were not considered; but that the votes from said townships were included in said final computation and certification as the same were reported by the township boards of in-

spectors, and that in said computation the board also included the vote cast in the first ward of Stanton, and in the township of Belvidere and the township of Pine as returned by the board of inspectors, and did not consider the result of any recount of said townships, for reasons hereinafter set forth.

"This respondent, however, denies that with the result shown by the recount of said townships included, as alleged by said relator in the seventh paragraph of said petition, the said relator would have had but 13 less votes for said nomination than he was shown to have received by the returns of the several boards of primary election inspectors, and also denies that the said Taylor would have had 15 less votes for the republican nomination for county clerk than he was shown to have received by such returns from the townships, and says that on the application of said Harmon W. Taylor the vote in the township of Reynolds was recounted by these respondents on the 6th day of September, 1912, and said recount showed that said relator had received three less votes in said township of Reynolds than he appeared to have received by the returns of the township inspectors; and that the recounts had in the townships of Reynolds, Bushnell, Belvidere, Pine, Richland, Douglas, Day, and Ferris, and the first ward of Stanton and the second ward of Stanton, would show that the said relator gained 1 vote in all of said recounts, and lost 20, including his alleged recount of the township of Douglas, and that the said Taylor by said recounts in said several townships and wards, gained 4 votes and lost 18 votes, and a net loss to the relator of 19 votes, which computation leaves out the 1 vote from Evergreen and the 1 vote from Richland; that if said 2 votes are credited to the relator, and all other correction made according to the result as claimed, the said relator and the said Taylor would stand a tie, but that if said 2 votes, 1 in the township of Richland, and 1 in the township of Evergreen, should not have been counted for the said relator and included in said computation, the said Taylor would have been two votes ahead; that the only action of said board affecting the rights of the parties contestant before said board in any way or manner is the action taken upon the said 2 votes in Richland and Evergreen. And this respondent denies that by its rejection and ignoring of such recount in the townships named in said petition, as well as in the townships not named therein, the relator

was deprived of two votes which should have been credited to him in the board's final computation and certification of votes cast for him at said primary election; and says that the relator has not laid before this court in the seventh paragraph of his petition a true statement of all the results of recounts in said county."

As no issue is asked for by the relator, this statement of facts must be taken as true. *City of Benton Harbor* v. *Railway Co.*, 102 Mich. 386 (60 N. W. 758, 26 L. R. A. 245, 47 Am. St. Rep. 553). There must therefore be eliminated from discussion all other claimed irregularities, with the exception of the two votes in the townships of Richland and Evergreen. The action of the respondents with reference to these two votes is set up in their answer, as follows:

"These respondents admit that on the 23d day of September, 1912, a recount was had before said board of county canvassers of the republican votes cast at said election for a candidate for the office of county clerk in the township of Richland, but deny that the said board then and there counted, tallied, ascertained, and determined the total vote cast both for said relator and for said Harmon W. Taylor, but say that there appeared in said township of Richland one vote which was properly marked in the square before the name of said relator, but that said vote was not marked with the initials of any inspector, and could not be identified by these respondents as a vote cast at said election; that said Harmon W. Taylor protested against the same being tallied, and the said relator insisted that the same be tallied in his favor; that thereupon these respondents entered a tally mark on their tally sheet representing said ballot, with the understanding that they should consider the matter further, and should determine afterward whether said ballot was legal or not, and whether or not relator was entitled thereto; and that afterwards, being advised that said ballot was not a legal ballot, and the said relator not entitled thereto, these respondents did not include said ballot in their final statement and total of votes cast.

"These respondents further state that on the said 25th day of September, 1912, a recount was had before the board of county canvassers of the republican votes cast

for the nomination for a candidate for county clerk at said primary election at the township of Evergreen in said county, but deny that the same was then counted, tallied, ascertained, and determined; but say that it was discovered that among said ballots in the township of Evergreen there was one ballot having a cross mark in the square before the name of relator, and a distinguishing mark, but not a cross, in the square before the name of Harmon W. Taylor upon the same ballot; that said ballot had apparently been rejected by the board of inspectors; that the relator demanded that said ballot be tallied, and that he be given credit therefor, and the said Harmon W. Taylor objected thereto; that the said board did for the time being make a mark upon its tally sheet, crediting said ballot to said Abbott, with the understanding that they should consider the matter further; and afterward, being advised that said ballot was not a legal vote for the said W. Glen Abbott, did not include the same in their statement of the aggregate votes in said county, and in their final return of said canvass."

No claim is made by the relator that the two ballots rejected by the board of county canvassers were legal votes, but he insists that, inasmuch as they were tallied upon the tally sheet, the statement made by the board that they would consider them further must be disregarded, and that the board had no right to change their determination so made. We cannot agree with this contention, and it would seem that it would be the duty of the board to correct any error they had made while regularly in session, if discovered by them before their final adjournment. The board acted properly in making the correction.

The writ prayed for is denied.

MOORE, C. J., and STEERE, McALVAY, BROOKE, STONE, OSTRANDER, and BIRD, JJ., concurred.