THOMPSON *v.* CIHAK.

1. SCHOOLS AND SCHOOL DISTRICTS—ELECTIONS—BONDS—INITIALING BALLOTS.
   Failure of inspectors to initial ballots cast at election held under 2 Comp. Laws 1929, § 7487, for purpose of authorizing bond issue by school district, did not void election, in absence of fraud or mandatory law commanding initialing.

2. SAME—QUALIFICATIONS OF ELECTORS PROPERLY INQUIRED INTO.
   In proceedings attacking validity of election authorizing bond issue by school district, trial court properly inquired into qualifications of alleged unqualified electors and how those unqualified voted.

3. ELECTIONS—UNQUALIFIED ELECTOR REQUIRED TO DISCLOSE HOW HE VOTED.

Person who admits that he voted without proper qualifications may, in judicial proceeding, be required to disclose how he voted.

4. SCHOOLS AND SCHOOL DISTRICTS—ELECTIONS—PERMITTING UNQUALIFIED PERSONS TO VOTE.

That election inspectors permitted unqualified persons to vote does not invalidate election, unless it is affirmatively shown that such wrongful vote overturned declared result of election.

5. SAME—FAILURE TO TAKE OATH AS INSPECTORS—ELECTIONS—IRREGULARITIES.

Where school district officers took oath of office, their failure to take oath as inspectors of school bond election, which was part of their duties, was mere irregularity which did not invalidate election.

6. SAME—FAILURE TO APPOINT FOURTH INSPECTOR—IRREGULARITIES.

Failure of school district officers, acting as inspectors of school bond election, to appoint fourth inspector, was mere irregularity which did not invalidate election, in absence of request by electors that such appointment be made.

7. ELECTIONS—IRREGULARITIES—PUBLIC POLICY.

To hold that slight irregularities, for which voters are not to blame, invalidates election, is contrary to public policy.

8. SAME—IRREGULARITIES—MANDATORY PROVISIONS—FRAUD—COERCION.

Unless irregularities consist of failure to observe mandatory provisions, neglect to follow which will invalidate election, they will be overlooked, in absence of fraud or coercion.

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 22, 1931. (Docket No. 80, Calendar No. 35,584.) Decided June 1, 1931.

Bill by John Thompson and others against Frank J. Cihak and others, school district officers of Fractional School District No. 2 of Laketon and Muskegon townships, to restrain issuance of bonds. Decree for defendants. Plaintiffs appeal. Affirmed.

*Joseph T. Riley,* for plaintiffs.

*Alexis J. Rogoski,* for defendants.

BUTZEL, C. J.   Plaintiffs, residents and taxpayers of Fractional School District No. 2 of Laketon and Muskegon townships, Muskegon county, Michigan, brought suit against defendants, as officers of the school district, to restrain the issuance of $12,500 of bonds for building an addition to a schoolhouse. Plaintiffs claim that the special election held for the purpose of authorizing the bond issue was conducted without complying with the provisions of the law and should be held for naught.   It is conceded that due notice of the election was posted, that printed ballots, properly worded, were furnished the electors, and that there was no fraud or oppression exercised.   The three defendant officers acted as inspectors of election.   There was no demand that a fourth inspector be appointed from the voters, and none was appointed.   The inspectors were not sworn.   The ballots were not initialed.   A poll list was kept in duplicate by one of the inspectors and contains the names of the voters as given the night of the election.   There were 50 ballots cast in favor of the bonding proposition, 46 against it, and three were properly thrown out as nonindicative of the choice of the electors.   Plaintiffs claim the election void on account of the failure to appoint a fourth election inspector, the omission of the oath, and of the initialing of the ballots cast.   They further claim that unqualified persons were permitted to vote. These persons are designated by name in the bill of complaint.   At the hearing the trial judge permitted testimony to be introduced in order to determine whether such persons were qualified or not. Those found not to have been qualified, testified how

they voted. Of the nine votes cast by such illegal voters, three were in favor of the bonding proposition, and six against it. The final result, after deducting these votes from the count of the inspectors, showed that 47 voted in favor of the proposition, and 40 against it. The trial judge held that the objections raised were only irregularities that did not affect the result of the election, and that inasmuch as no fraud was shown, the election was valid and the bonding proposition carried by a majority of votes. Plaintiffs have appealed, and the issuance of the bonds has been stayed until the final outcome of the suit.

The election was held in accordance with the provision of the law which governs the issuing of bonds by school districts (2 Comp. Laws 1929, § 7487), and which does not make the initialing of ballots mandatory. It would have been better practice to have initialed them, but in the absence of fraud and a mandatory law commanding the initialing of ballots, the failure to initial them did not void the election.

It was also proper for the trial court to inquire into the qualifications of voters alleged to have been disqualified, and if they did not have the right to vote, to ascertain how they voted. A person who admits that he voted without proper qualifications may, in a judicial proceeding, be required to disclose how he voted. *Gardner* v. *Board of School District No. 6, Township of Leoni,* 248 Mich. 134. Nor will the fact that election inspectors permitted unqualified persons to vote invalidate the election unless it is affirmatively shown that such wrongful vote overturned the declared result of the election. *Sargent* v. *City of Santa Fe,* 24 N. M. 411 (174 Pac. 424).

The failure to take the oath of office under the circumstances of this case will not invalidate the election. The inspectors had taken the oath of office when they became officers of the school district, and the conduct of an election of this kind was part of their duties. Voters will not be disfranchised by the irregularity claimed. *Davis* v. *Town of Saluda,* 147 S. C. 498 (145 S. E. 412); *State, ex rel. City of Memphis,* v. *Hackman,* 273 Mo. 670, 700 (202 S. W. 7, 15). In the latter case, the court, in holding that failure of the judges of the election to take the oath of office did not affect the election, said:

"The reasoning in support of this conclusion is that, although not sworn to, the judges were *de facto* officers and acted as such, as in the case of judicial officers acting under like circumstances, and that their acts will therefore not be held invalid."

The failure of the district board to appoint a fourth inspector to be selected by the qualified voters present was merely an irregularity, in view of the fact that the voters did not make such a selection or ask that one be made. This is not a case where demands properly made by qualified voters were refused by the officials in charge, as in *Heims* v. *School District No. 6 of Davison Twp.,* 253 Mich. 248.

In *Ward* v. *Kropf,* 120 N. Y. Supp. 476, affirmed in 143 App. Div. 919 (127 N. Y. Supp. 1148), an election was held valid where, contrary to a village charter, a board of trustees appointed two election inspectors both from the same party instead of one from each party. In *Ryan* v. *Mayor, etc., of Tuscaloosa,* 155 Ala. 479 (46 South. 638), an election was upheld although the mayor, instead of the council, as provided by law, appointed the inspectors. The

court stated that when an election is conducted by *de facto* officers, it will be upheld unless actual fraud or misdemeanor is imputed in the conduct or result of the election.

In the final analysis, we must consider the fact that this election was honestly and fairly conducted. Slight irregularities are more than apt to creep into the procedure. As a rule those in charge of such an election are not lawyers. When, as in this case, even doubt is raised in the briefs presented as to which law the election should have followed, it is evident that a knowledge of the law and its details is frequently not possessed by the officers and electors in a fractional school district, whose honesty and fairness are not even remotely questioned. To hold that slight irregularities, for which the voters were not to blame, should invalidate the election, is contrary to public policy. Unless the irregularities consist of failure to observe mandatory provisions, the neglect to follow which will invalidate the election, they will be overlooked, in the absence of fraud or coercion.

In *Lindstrom* v. *Board of Canvassers of Manistee County,* 94 Mich. 467 (19 L. R. A. 171), it is said:

"It may be stated, as a general rule, that the provisions of law relating to the manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State.

"In *People* v. *Bates,* 11 Mich. 362 (83 Am. Dec. 745), it appeared that tickets cast for city officers were not found in the box provided for that purpose,

but were found in the State and county box, and were counted by the inspectors. It was said by the court that the two elections, though held upon the same day, were distinct and independent of each other, as much as if they had happened on different days.

" 'But, though thus distinct, and the ballots to be deposited in separate boxes, yet as both were held together under the supervision of the same inspectors, with both boxes before them for the reception of ballots, the inspector receiving the ballot might be liable, by honest mistake, occasionally to deposit a ballot in the wrong box; and, if he understood that the ballots found in the wrong box were in no case to be counted, he might do the same thing for a fraudulent purpose. But the elector is not to be deprived of his vote either by the mistake or fraud of the inspector in depositing it in the wrong box, if the intention of the voter can be ascertained with reasonable certainty. To hold otherwise would be to give more effect to the letter than to the manifest · purpose of the statute.'

"In *Adsit* v. *Secretary of State,* 84 Mich. 420 (11 L. R. A. 534), it was held that the vote of the people could not be defeated by the failure on the part of the secretary of State to give notice of an election, and that the provision requiring such notice was directory, merely, and not mandatory.

"So it is stated generally in McCrary on Elections (3d Ed.), § 193:

" 'Those provisions of a statute which affect the time and place of the election, and the legal qualifications of the electors, are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory. The principle is that irregularities which do not tend to affect results are not to defeat the will of the majority; the will of

the majority is to be respected, even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the people are not to suffer on account of the default of their agents.' "

See, also, *Abbott* v. *Montcalm County Canvassers,* 172 Mich. 416.

The election is held to be valid, and the decree of the lower court is affirmed. As the case is one of public interest, no costs will be allowed.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.