(No. 23513.—

LESTER A. SIEDSCHLAG, Appellant, *vs.* FRANK MAY, Appellee.

*Opinion filed June 10, 1936.*

D. T. Smiley, (M. A. Carmack, of counsel,) for appellant.

David R. Joslyn, Jr., for appellee.

Mr. Justice Farthing delivered the opinion of the court:

Lester A. Siedschlag, appellant, opposed Frank May, appellee, for the office of supervisor in the town of Burton, McHenry county, at the election on April 2, 1935. May was declared elected and Siedschlag contested his election in the county court of that county, with the result that May was found to have been duly elected. Siedschlag has appealed.

Appellant questions the ruling of the trial court as to seven ballots which absent voters attempted to cast and its ruling as to the right of four other voters to vote at the election.

As to the seven ballots, the testimony shows that the seven absent voters obtained ballots from Wagner, the town clerk, and that he retained possession of them until he delivered them at the polling place to the judges on election day. Several witnesses testified on behalf of appellant that when the clerk, Wagner, handed the envelopes

to Byron Orvis, one of the judges, the latter opened the envelopes, took out the ballots, unfolded them so that they could see how the voters had marked them, and most of these witnesses testified that six of these ballots were marked for May and one for Siedschlag. They also testified that Orvis did not initial the seven ballots. One witness testified that Orvis made the remark, after the election, that "the ballots were marked the Saturday before the election." Orvis denied having made this remark, and he and Wagner testified that Orvis initialed these seven ballots in the polling place at the election. Orvis also denied unfolding the ballots and looking at them or exposing them to the view of others. When the ballots were counted during the election contest it was found that all of them had been properly initialed. There was no dispute as to the fact that these seven ballots were put on the table, that the ballot-box was opened and its contents dumped on top of them and that all the ballots were mixed together and then counted. These seven ballots were never deposited in the ballot-box.

No fraud or improper motive is shown, but appellant contends that the six ballots which his witnesses say they saw and which they say were marked for May, and the one ballot marked for appellant, should be deducted from the number of votes counted for appellee and appellant, respectively. The names of the seven absent voters were the last entered in the poll-book.

Section 9 of the Absent Voters act (Ill. State Bar Stat. 1935, chap. 46, par. 158; 46 S. H. A. 470;) provides: "At the close of the regular balloting and at the close of the polls the judges of election * * * shall proceed to cast the absent voters' ballots separately, and as each absent voter's ballot is taken shall open the outer or carrier envelope, announce the absent voter's name, and compare the signature upon the application with the signature upon the affidavit on the ballot envelope. In case the judges find the

affidavits properly executed, that the signatures correspond, that the applicant is a duly qualified elector in the precinct, and the applicant has not been present and voted within the county where he represents himself to be a qualified elector on such election day, they shall open the envelope containing the absent voter's ballot in such manner as not to deface or destroy the affidavit thereon, or mark or tear the ballots therein, and take out the ballot or ballots therein contained without unfolding or permitting the same to be unfolded or examined, and having endorsed the ballot in like manner as other ballots are required to be endorsed, shall deposit the same in the proper ballot-box or boxes and enter the absent voter's name in the poll-book the same as if he had been present and voted in person." Appellant's contention is that this statutory provision is mandatory, and that a failure to deposit the seven ballots in the ballot-box rendered them void.

In *Piatt* v. *People*, 29 Ill. 54, 72, speaking through Mr. Justice Breese, we said: "The rules prescribed by the law for conducting an election, are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory, merely—not jurisdictional or imperative. If an irregularity, of which complaint is made, is shown to have deprived no legal voter of his right, or admitted a disqualified person to vote—if it casts no uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive a benefit from it—it may well be overlooked in a case of this kind, when the only question is, which vote was the greatest, that for subscription or that against subscription."

In *Bloome* v. *Hograeff,* 193 Ill. 195, the ballots not objected to were deposited in the hat of one of the judges of the election instead of being deposited in a ballot-box. The eleven ballots which were questioned were deposited in the hat of the successful candidate. We held that these bal-

lots should be counted, and said, page 198: "The hat of the petitioner Hograeff, was not a ballot-box provided by the judges as such, or used or recognized by them as a ballot-box or receptacle for ballots. The voters might just as well have deposited their ballots in any other place as in the hat, and they were never cast as ballots at the election. The only serious question in the case is whether the votes, which were improperly rejected, should be counted in the contest. There were enough of them to change the result of the election, and if they cannot be counted the whole election should be declared void. If they can be counted the will of the electors will be carried out and the election will not be defeated. The question is not free from doubt, and some courts have preferred one view and some the other, but we are inclined to adopt as the better doctrine the rule that if there is no difficulty in determining whom the qualified voter attempted to vote for, and the *proper result can be reached with certainty, the vote should be counted and the entire election not be set aside.* In this case there is no question whatever as to whom the ballots presented by the women were for. * * * They were preserved, sealed up and produced at the trial of the contest, and none of these facts are questioned. There were some irregularities in the election, but no one complains of the use of a hat which was adopted as a ballot-box instead of a regular box. The true result of the election, if the legal ballots had been received, has been determined beyond question, and we think the county court was right in counting the rejected ballots, which were offered for the petitioner and which the voters were prevented from depositing.—*Niblack* v. *Walls,* Smith's El. Cas. 101; *Bell* v. *Snyder,* id. 247."

In *People* v. *Graham,* 267 Ill. 426, we made an extended review of the decisions of this court in support of the holding that the election there in question was not rendered void by the fact that a single polling place was pro-

vided for the three wards of the city, thus making it necessary for all the voters in two wards to go to a polling place outside their wards to vote for the candidates for mayor, alderman and other city officials. At page 436 we said: "A mandatory provision in a statute is one the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one the observance of which is not necessary to the validity of the proceeding. Directory provisions are not intended by the legislature to be disregarded, but where the consequences of not obeying them in every particular are not prescribed the courts must judicially determine them. In doing so they must necessarily consider the importance of the punctilious observance of the provision in question to the object the legislature had in view. If it be essential it is mandatory. (2 Lewis' Sutherland on Stat. Const.—2d ed.— sec. 610.) No universal rule can be given to distinguish between directory and mandatory provisions. The controlling question in this as in all other rules of construction is, what was the intention of the legislature? Whether a statute is mandatory or directory does not depend upon its form but upon the legislative intention, to be ascertained from a consideration of the entire act, its nature, its object and the consequences which would result from construing it one way or the other. * * * In general, statutes directing the mode of proceeding by public officers are deemed advisory, and strict compliance with their detailed provisions is not considered indispensable to the validity of acts done under them. (Endlich on Interpretation of Statutes, sec. 437.) The terms 'mandatory' and 'directory' may be convenient to distinguish one class of irregularities in election matters from the other. 'But, strictly speaking, all provisions of such laws are mandatory in the sense that they impose the duty of obedience on those who come within its purview, but it does not therefore follow that

every slight departure therefrom should taint the whole
proceedings with a fatal blemish. Courts justly consider
the chief purpose of such laws, namely, the obtaining of a
fair election and an honest return, as paramount in im-
portance to the minor requirements which prescribe the
formal steps to reach that end.' [Citing authorities.] The
Supreme Court of one of our sister States has held that
'all provisions of the election law are mandatory if en-
forcement is sought before election in a direct proceeding
for that purpose, but after election all should be held di-
rectory, only, in support of the result, unless of a character
to affect an obstruction to the free and intelligent casting
of the votes or to the ascertainment of the result, or un-
less the provisions affect an essential element of the elec-
tion, or unless it is expressly declared by the statute that
the particular act is essential to the validity of an election
or that its omission shall render it void.'—*Jones* v. *State,*
153 Ind. 440; *Norman* v. *State,* 99 N. E. (Ind.) 812."

The rule deducible from the decisions is, that statutes
giving directions as to the mode of conducting elections
will generally be construed as being directory unless a fail-
ure to comply therewith is expressly declared to be fatal.
If the statute only provides that certain things shall be done
in a given way and at a certain time, and there is no dec-
laration that conformity to these provisions is essential to
the validity of the election, the statute will be construed to
be directory and not mandatory. No discretion is given
where the terms of the statute are peremptory and explicit,
and where penalties are imposed for a violation of the act
they have the same effect as express negative provisions.
(20 Corpus Juris, 181; *Behrensmeyer* v. *Kreitz,* 135 Ill.
591; *Perkins* v. *Bertrand,* 192 id. 58; *Gill* v. *Shurtleff,*
183 id. 440.) This section of the statute with reference
to the depositing of these ballots is directory, and the trial
court did not err in holding that the seven ballots should
be counted.

Appellant also complains as to the rulings on the votes of Walter J. Slómer, Virginia Slomer, Mary Stevenson and Ida Swenson. The trial court erred in its ruling that Edith Skidmore's ballot should be counted for appellant. The proof showed that she voted outside the booth, and that one of the witnesses saw that she voted for appellant. In *Choisser* v. *York*, 211 Ill. 56, we held that such ballots were illegal. With this vote deducted, appellant's total would be 114. If all four of the votes appellant complains about were subtracted from the 121 votes for appellee or added to appellant's total the result would not be changed. It is not necessary, therefore, to pass upon appellant's contentions with reference to these votes.

The judgment of the trial court is right and is affirmed.

*Judgment affirmed.*