STAMOS v GENESEE COUNTY BOARD OF CANVASSERS

ELECTIONS—ABSENTEE BALLOTS—LATE DELIVERY—STATUTES.

Failure of a city clerk to comply with the statute requiring the deposit of absentee ballots with the proper election board before the closing of the polls on election day did not invalidate the ballots because an election official's failure to comply with statutory provisions governing election procedures will not, absent an unequivocal legislative expression to the contrary, be held to deny effect to ballots lawfully cast by the voters (MCLA 168.764, 168.765).

Appeal from Genesee, Donald R. Freeman, J. Submitted Division 2 April 11, 1973, at Lansing. (Docket No. 15840.) Decided April 25, 1973. Leave to appeal denied, 389 Mich 808.

Complaint by Daniel Stamos to enjoin the Genesee County Board of Canvassers, Joseph Conroy, and Lloyd Hendon, Flint City Clerk, from opening, reviewing, or counting 22 absentee ballots. Relief denied. Plaintiff appeals. Affirmed.

*Robert P. Keil,* for plaintiff.

*Bekofske, Donnellan & Hanflik,* for defendant Joseph Conroy.

Before: FITZGERALD, P. J., and J. H. GILLIS and ADAMS,* JJ.

ADAMS, J. Plaintiff Stamos commenced this action on November 9, 1972, seeking to enjoin de-

REFERENCE FOR POINTS IN HEADNOTE

26 Am Jur 2d, Elections § 245 *et seq.*

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

fendants from opening, reviewing, or counting 22 absentee ballots. Plaintiff and defendant Conroy were opposing candidates for the office of Sixth District Representative to the Genesee County Board of Commissioners in the November 7, 1972 general election. According to the unofficial count of the votes compiled by defendant Hendon, city clerk, Stamos received 6092 votes and Conroy received 6086 votes. The 22 absentee ballots here in question came into the possession of Hendon, or his staff, during election day at some unascertainable time prior to 6:30 p.m.[1]

Hendon, in his capacity as city clerk, had issued some 4100 absentee ballots in connection with the 1972 general election. A representative of the Flint city clerk's office went to the main Flint post office at 6:30 p.m. and picked up all absentee ballots then on hand. In previous elections this procedure had provided ample time to make deliveries to the respective precincts. The ballots were brought back to the office of the city clerk where the signatures on the outer envelopes were compared with the signatures on the applications for the ballots. The ballots were sorted by precinct numbers to correspond to the 134 precincts in the City of Flint and were then collected by field

[1] MCLA 168.764; MSA 6.1764 (§ 764 of the Michigan Election Law) provides, *inter alia,* that the following instructions be furnished to each absent voter by the clerk:

" 'Place the necessary postage upon the envelope and deposit the same in the post office or in some government receptacle provided for the deposit of mail matter, or deliver the same personally to said clerk before the opening of the polls on election day. Absent voter's ballots to be valid must be mailed or delivered by some person other than the absentee voter so that they will reach the clerk of the city, township or village in which your precinct is located in time to be deposited by him with the proper election board before the closing of the polls on primary or election day.' "

The trial judge found that the 22 absent voters had fully complied with the requirements of the law and such finding is not seriously contested by plaintiff.

supervisors who were generally ready to leave city hall at 7 p.m.

The city clerk utilized the services of four field supervisors to deliver the absentee ballots to the precincts. Each supervisor was responsible for an area equal to roughly one-fourth of the City of Flint. Cleo Jackson, one of the field supervisors, was 71 years of age. He had been an election worker for some 30 years. His assigned delivery area contained 42 precincts at 21 locations. He had delivered absentee ballots to the precincts in the same area for 16 to 18 years and knew the area well.

Jackson's load of absentee ballots was divided with another man, James Toombs, who assisted the city clerk's office with emergencies on election day. Toombs was given absentee ballots for precincts at eight locations. Jackson was assigned absentee ballots for precincts at 13 locations in the extreme northern portion of the city. Of his 13 stops, 6 involved multiple precincts.

Jackson arranged his assigned absentee ballots in an order which, based on his prior experience and familiarity with the area involved, would make for the most speedy and expeditious delivery of them. He left the city hall at approximately 6:55 p.m. and went to his car which was parked in front of the building.

Jackson described the weather conditions at that time as "miserable". It was raining just enough to smear the windshield. Traffic was fairly heavy. Despite following the route he had used in his many years of prior experience, he encountered congested parking conditions and groups of campaigners, and was also hampered by the rain and weather. Jackson intended to deliver the absentee ballots in the most expeditious manner and stated that he did his "damndest".

He was able to deliver ballots to some eight locations. Jackson arrived at the ninth location a few minutes after 8 p.m. Because the polls were then closed, he was unable to deliver the 22 absentee ballots remaining in his possession. These 22 undelivered ballots represented 11 different precincts at 5 different locations, all situated within the Sixth County Commissioner District of Genesee County.

Jackson took the undelivered ballots to the city market, a central receiving point for election supplies, arriving there about 8:30 p.m. He turned them in to a deputy clerk. The 22 ballots were at no time within the ballot boxes at the respective precincts nor were they inside the precincts themselves prior to the close of the polls at 8 p.m. on election day.

Defendant Hendon, as city clerk, first learned of the 22 ballots between 3 a.m. and 4 a.m. on November 8, 1972. The ballots have since remained in sealed and unopened envelopes in his possession. They were not included in the tally of election results furnished by him to defendant Genesee County Board of Canvassers.[2]

---

[2] MCLA 168.765; MSA 6.1765 (§ 765 of the Michigan Election Law) provides in pertinent part:

"It shall be the duty of the city, village or township clerk, or someone delegated by him, to call for and receive absent voters' ballots from the postoffice at which such city, village or township clerk regularly receives mail addressed to such city, village or township clerk on election day in sufficient time to deliver any envelopes containing absent voters' ballots to the board of inspectors of election before the closing of the polls. All marked absent voters' ballots received by the city, village or township clerk, after the final adjournment of the polls, or too late to be delivered by him to the inspectors of election, shall be plainly marked by him with the time and date of receipt and shall be filed in his office."

It is this section of the election law upon which plaintiff primarily bases his appeal.

MCLA 168.768; MSA 6.1768 (§ 768 of the Michigan Election Law) sets forth the duties of the board of election inspectors as to absentee

In response to plaintiff Stamos' action to restrain the counting of the 22 ballots, Judge Donald R. Freeman issued an *ex parte* restraining order on November 9, 1972 and ordered a show cause hearing to be held on November 15, 1972. He also entered an order restraining defendant Board of Canvassers from certifying any election results in the Sixth District County Commissioner election until further order of the court. On November 28, 1972, following the show cause hearing, Judge Freeman issued an opinion in which he held the 22 absentee ballots to be valid and entitled to be counted. The following day, pursuant to a petition by plaintiff, he ordered a stay of proceedings pending further order by himself or the Court of Appeals. Plaintiff appealed to this Court. Defendant Conroy's application for leave to appeal to the Michigan Supreme Court prior to decision by this Court (GCR 1963, 852) was denied.

### Issue

*Are 22 absentee ballots which were not in ballot boxes at the respective precincts prior to the close of the polls on election day valid and entitled to be counted?*

Judge Freeman's opinion reads in part as follows:

"In 29 CJS, Elections, § 210(7), pp 595–596, it is stated:

" 'Under statutes requiring deposit of absentee ballots

___

ballots. The trial judge's opinion in the case at bar provides that the county Board of Canvassers shall reconvene and summon before it the election inspectors and require them to make correct returns in the precincts where the absentee ballots were undelivered, including in their count all undelivered ballots otherwise meeting statutory requirements. Plaintiff does not seriously contend that this procedure cannot be accomplished if this Court decides that the 22 ballots should be counted.

in the ballot box, it has been held that the absentee vote is not complete until such deposit has been made. *On the other hand, such statutory provisions have been construed as so far directory, rather than mandatory, in character that a technical noncompliance therewith will not invalidate the absentee vote.'* (Emphasis supplied.)

"In 26 Am Jur 2d, Elections, § 252, p 80, it is said:

" 'Error in the clerk's ministerial duty to deliver the ballots to the election officials is not, in the absence of fraud, or a challenge of the votes cast, sufficient to invalidate them.'

"And, it is further stated in the above Am Jur 2d section (pp 79–80):

" 'Other statutory directions for the issuance of an absentee ballot and for the receipt * * * canvassing * * * and safekeeping of such ballots have been held to be merely *directory,* and failure on the part of election officials to comply with such provisions will not invalidate the ballots cast, provided they were cast by voters who were, at the time, qualified to cast them, and such voters had at the time done all on their part that the law required them to do to make their voting effective, and provided the votes were legal in their inception and remained capable of being given proper effect as such.' (Emphasis supplied.)

"In the case of *In Re Chairman in Town of Worcester,* 29 Wis 2d 674[681]; 139 NW2d 557, 561 (1966), the Supreme Court of Wisconsin considered *the distinction between mandatory and directory election statutes* and concluded:

" ' '' ' ''The difference between mandatory and directory provisions of election statutes lies in the consequence of nonobservance: An act done in violation of a mandatory provision is void, whereas *an act done in violation of a directory provision, while improper, may nevertheless be valid.* Deviations from directory provisions of election statutes are usually termed 'irregularities,' and, as has been shown in the preceding subdivision, such irregularities do not vitiate an election. *Statutes giving directions as to the mode and manner of conducting elections will be construed by the courts as*

*directory, unless a noncompliance with their terms is expressly declared to be fatal,* or will change or render doubtful the result, as where the statute merely provides that certain things shall be done in a given manner and time without declaring that conformity to such provisions is essential to the validity of the election." ' " ' (Emphasis supplied.)

"A full examination of the Michigan statutes with reference to the casting of an absentee ballot and the processing of such ballot thereafter does not indicate, by the standard above stated, any intention of the legislature to make the failure of the clerk to deliver the ballot to the precinct prior to the closing of the polls as being mandatory and fatal.

"In *Siedschlag v May,* 363 Ill 538[543, 544]; 2 NE2d 836, 838 (1936), where the issue of directory and mandatory provisions of election statutes were considered the Court said:

" 'Whether a statute is mandatory or directory does not depend upon its form, but upon the legislative intention, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences which would result from construing it one way or another. * * * . *Courts justly consider the chief purpose of such laws, namely, the obtaining of a fair election and an honest return, as paramount in importance to the minor requirements which prescribe the formal steps to reach that end.'* (Emphasis supplied.)

"The Court in *Siedschlag* continued:

" 'If the statute only provides that certain things shall be done in a given way and at a certain time, and there is no declaration that conformity to these provisions is essential to the validity of the election, the statute will be construed to be directory and not mandatory.'

"The testimony has not disclosed any irregularities in either the receipt of the ballots by the city clerk or the failure to have timely delivery to the various precincts.

"In a full consideration of all that testimony and the authority, which the court has cited, it is the conclusion of this court that the statute with respect to timely

delivery to the precincts, prior to the closing of the polls on election day is directory and not mandatory."

In *Attorney General ex rel Miller v Miller,* 266 Mich 127, 132–133 (1934), the Supreme Court concluded that a mistake by election officials would not void the votes of an entire precinct. In that case the Court stated:

"It is claimed the statute, 1 Comp Laws 1929, § 3155, which provides: 'All computations and tallies shall be made upon the tally sheets used at such election,' is mandatory and the failure of the election officials in that precinct to observe it vitiates the election therein and the entire precinct should be thrown out. There is no provision in the statute which excludes the vote of the precinct or says the election therein shall be void for failure to make the computations and tallies upon the tally sheets provided. The primary object of an election is to enable the voters of the precinct to express their choice of candidates. They ought not to be deprived of the right to express that choice by the fault or neglect of election officials. The authorities all recognize that fraud upon the part of the voter vitiates his ballot, but fraud or mistake on the part of the inspectors of election should not operate to defeat the will of the voter. *People, ex rel Hayes, v Bates,* 11 Mich 362 (83 Am Dec 745) [1863]; *People, ex rel Prosecuting Attorney, v Avery,* 102 Mich 572 [1894]; *Horning v Board of Canvassers of Saginaw County,* 119 Mich 51 [1898]. It is not claimed the election itself in this precinct was in any way irregular. The irregularity was in the failure of the election officers to use the official tally sheets and the mistake made in the count."

In *Groesbeck v Board of State Canvassers,* 251 Mich 286, 291–292 (1930), the Court stated the following principles:

"Other provisions, however, while expressed mandatorily, are held directory in some circumstances, in that their nonobservance is not fatal to a count of ballots,

notably when they involve the performance of duty by an election official, the neglect of which has no effect upon the election or will result in disfranchising voters without their fault. An elector has the right to rely upon a legally authenticated ballot, in statutory form, handed to him at the polls by an election official, as being an official ballot upon which he can cast a lawful vote for a candidate of his choice. He is not bound to trace the history of the ballot to ascertain that all the provisions of law have been fulfilled in its preparation. This court has said:

" 'It may be. stated, as a general rule, that the provisions of law relating to the ·manner of conducting elections will not be held so far mandatory as that a departure therefrom will result in the disfranchisement of a district or a class of voters, or the defeat of a candidate himself free from fraud, except in cases where the legislative intent that such departure shall have that effect is clearly and unequivocally expressed. This is a rule which has been applied in this State.' *Lindstrom v Board of Canvassers,* 94 Mich 467 (19 LRA 171) [1893].

" 'If the fraud of the voters, the ballots should not be counted; if that of the inspector, they should.' *People v Bates,* 11 Mich 362 (83 Am Dec 745) [1863].

" 'The voter finding the ticket upon the ballot cannot be required to determine its regularity at his peril. This might involve a necessary knowledge of facts difficult to ascertain. He may safely rely upon the action of the officers of the law, who he has a right to suppose have done their duty.' *Bragdon v Navarre,* 102 Mich 259 [1894].

" 'It would be a dangerous rule to establish that the board of election inspectors could thwart the will of the voters by a neglect to perform the duty imposed upon them by statute, and it should not be so held except where the plain provisions of the statute require it.' *Attorney General v Glaser,* 102 Mich 396 [1894].

"See, also, *People v Board of Supervisors,* 240 Mich 115 [1927]; *Abbott v Montcalm County Canvassers,* 172 Mich 416 [1912]; *Horning v Board of Canvassers,* 119

Mich. 51 [1898]; 9 RCL pp 1061, 1091, 1092; 20 CJ p 152."

For a statement of general principles to like effect, see also *Thompson v Cihak,* 254 Mich 641 (1931).

In *Brown v Grzeskowiak,* 230 Ind 110; 101 NE2d 639 (1951), 46 absent voters' ballots were voted and returned to the clerk's office but were not delivered to the polling places before the polls closed. These ballots were later opened, counted, and tabulated by the board of canvassers. The Court upheld the validity of the ballots and declared:

> "Any qualified absent voter who returns his ballot to the * * * * clerk's office in time for it to be delivered to the voting place in the precinct before the polls are closed on election day and has satisfied all the statutory requirements with which he must comply, is entitled to have his vote counted, and if because of the failure of the county clerk or any other election official to do his duty, such ballot is not delivered to the inspector of the precinct in time for it to be counted by the precinct election board it will be counted by the court in an election contest proceeding.
>
> * * *
>
> "To hold otherwise would be to open the door for an unscrupulous clerk to hold absent voters' ballots in his office beyond the time when they could be delivered to the precinct voting places and thereby disfranchise voters and control the results of an election." 230 Ind at 147; 101 NE2d at 654.

The sole irregularity in the instant case is the failure of the field supervisor to reach the precincts before 8 p.m. for reasons which could not be foreseen. The law prevents the disfranchisement of voters who arrive at the polls before 8 p.m. but who are unable, because of congestion at the polls,

to cast their votes until after that hour. MCLA 168.720; MSA 6.1720. It is undisputed that the 22 absent voters returned their ballots to the city clerk before 6:30 p.m. on election day. We do not believe that the miscalculation by the field supervisor should deprive them of their votes. Furthermore, since their delivery to the clerk's office all 22 ballots have remained continuously within the official custody and control of the clerk and his employees. This fact precludes any inference that the ballots might have been tampered with subsequent to their receipt by the clerk.

The overwhelming weight of authority holds that an election official's failure to comply with statutory provisions governing election procedures will not, absent an unequivocal legislative expression to the contrary, be held to deny effect to ballots lawfully cast by the voters. The relatively minor procedural irregularity in this case should not invalidate the 22 absentee ballots challenged by plaintiff.

The trial court is affirmed. No costs, a public question being involved.

All concurred.